**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 28, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

ROBERT C. BONNET, an individual;
BOBBY BONNET LAND SERVICES, a
sole proprietorship,

      Plaintiffs/Counterclaim-Defendants-
      Appellees,

v.

HARVEST (US) HOLDINGS, INC., a
Delaware corporation; BRANTA
EXPLORATION & PRODUCTION,
LLC, a Delaware limited liability
company; ELTON BLACKHAIR, an
individual,

      Defendants/Counterclaim-
      Plaintiffs,

and

UTE ENERGY LLC, a Delaware limited
company; CAMERON CUCH, an
individual,

      Defendants.

_____

UTE INDIAN TRIBE OF THE UINTAH
AND OURAY RESERVATION,

      Non-Party Movant-Appellant,

No. 12-4068

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 10-CV-217-CW-BCW)**

Frances C. Bassett (Thomas W. Fredericks, Jeremy J. Patterson, and Thomas McReynolds with her on the brief), Fredericks Peebles & Morgan LLP, Louisville, Colorado, for Non-Party Movant-Appellant.

Zachary E. Peterson (argued) (Lynn S. Davies and Rafael A. Seminario on the brief), Richards Brandt Miller Nelson, Salt Lake City, Utah, for Plaintiffs-Appellees.

_____

Before **GORSUCH**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

_____

**BALDOCK**, Circuit Judge.

_____

The issue before us is whether a subpoena duces tecum served on a non-party Tribe and seeking documents relevant to a civil suit in federal court is itself a "suit" against the Tribe triggering tribal sovereign immunity. Exercising jurisdiction under 28 U.S.C. § 1291, pursuant to the collateral order doctrine, we hold the answer is yes. We therefore reverse the district court's denial of the Tribe's motion to quash based on tribal immunity.

I.

Plaintiff Robert Bonnet is a petroleum landman who conducts business through his sole proprietorship, Bobby Bonnet Land Services; also a Plaintiff. In 2008, Plaintiffs entered into a written contract with the Energy and Minerals Department of the Ute Indian Tribe of the Uintah and Ouray Reservation to serve collectively as an independent contractor and consultant. When the Tribe terminated this contract in April 2009, Plaintiffs, on the basis of diversity jurisdiction, sued various companies and individuals

2

(but not the Tribe) in federal court, alleging these defendants caused the Tribe to terminate this contract prematurely. Plaintiffs served the Tribe with a non-party subpoena duces tecum requesting documents relevant to their suit. The Tribe moved to quash the subpoena based on the doctrine of tribal sovereign immunity. The district court denied the Tribe's motion to quash based on tribal immunity, but modified the subpoena to limit or strike requests it deemed overbroad. Bonnet v. Harvest (US) Holdings, Inc., 2012 WL 994403, at *1 (D. Utah Mar. 23, 2012) (unpublished). The Tribe now appeals.

In Part II of our opinion, we address whether the Tribe, as a non-party, can appeal the district court's denial of its motion to quash based on tribal immunity, notwithstanding lack of a final judgment. We hold such denial is an immediately appealable collateral order. In Part III, we address whether a subpoena duces tecum served on the Tribe and requesting documents relevant to the underlying civil suit in federal court is itself a "suit" against the Tribe triggering tribal sovereign immunity. We hold this form of judicial process is a "suit" against the Tribe and therefore tribal immunity bars enforcement of the instant subpoena.

II.

Our appellate jurisdiction depends on whether the district court's denial of the Tribe's motion to quash the subpoena based on tribal sovereign immunity is an immediately appealable order notwithstanding lack of a final judgment. The denial of a motion to quash is generally a non-appealable interlocutory order. United States v. Ryan, 402 U.S. 530, 532 (1971). Under the collateral order doctrine established in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949), however, an order is immediately

3

appealable if the order (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment. See United States v. Leon, 132 F.3d 583, 587 (10th Cir. 1997). We have recognized that "the denial of tribal immunity is an immediately appealable collateral order." See, e.g., Osage Tribal Council ex rel. Osage Tribe v. U.S. Dep't of Labor, 187 F.3d 1174, 1179 (10th Cir. 1999). In Osage, we held an order denying tribal immunity meets the Cohen requirements for an immediately appealable collateral order because (1) the order conclusively determines the disputed question of tribal immunity, (2) tribal immunity is an important issue completely separate from the merits of the case, and most importantly, (3) the denial of tribal immunity is effectively unreviewable on appeal from a final judgment because tribal immunity is "'an *immunity from suit* rather than merely a defense to liability,'" which is "'effectively lost'" if the case is allowed to proceed. Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

Osage and its progeny, however, involve cases where the tribe was a named party to the litigation. "[A] nonparty must independently satisfy our criteria for permitting a nonparty appeal." Bode v. Clark Equip. Co., 807 F.2d 879, 881 (10th Cir. 1986) (citing Dietrich Corp. v. King Resources Co., 596 F.2d 422, 424 (10th Cir. 1979)). In Bode, we held we lacked appellate jurisdiction over a non-party's appeal from an apportionment order because the apportionment order was neither a final order nor did it satisfy the requirements of an immediately appealable collateral order under Cohen. Id. By comparison, in Dietrich, we held a law professor who provided consulting services to two

4

law firms in a particular case could appeal a trial court order limiting his compensation agreement with the firms even though he was neither a party nor an attorney of record in the case. Dietrich, 596 F.2d at 424. Without much reasoning or reference, we stated that this order was a final order. We allowed the non-party professor to appeal because his interest in the consulting contract made him "an aggrieved party [whose] property interest can be protected only by recognizing this as one of those extraordinary cases where a nonparty may be allowed to appeal." Id. (citing Commercial Sec. Bank v. Walker Bank & Trust Co., 456 F.2d 1352, 1354 (10th Cir. 1972).

The Tribe argues that even though it is not a party to the underlying litigation, the district court's denial of its motion to quash based on tribal immunity is an immediately appealable collateral order because tribal immunity is a jurisdictional issue. Plaintiffs concede the denial of tribal immunity generally satisfies the Cohen requirements and generally constitutes an immediately appealable collateral order. They argue, however, that in order to appeal as a non-party, Dietrich requires the Tribe to also show this is an extraordinary case where the Tribe's property interests can only be protected by permitting a non-party appeal. Plaintiffs argue the Tribe cannot make this showing because the district court limited or struck the discovery requests "that would significantly impact the tribal treasury or tribal governance."

The issue of tribal immunity is indeed jurisdictional, Ramey Const. Co. v. Apache Tribe of Mescalero Reservation, 673 F.2d 315, 318 (10th Cir. 1982), and a look at the precedent underlying Dietrich belies Plaintiffs' argument. In Walker Bank & Trust Co., 456 F.2d at 1354, the United States appeared specially, as a non-party, to argue the

district court lacked jurisdiction to enjoin the United States from conducting a sheriff's sale. The district court declined to rule on the United States' motion. The United States then appealed, again arguing the district court did not have jurisdiction to enjoin it. The plaintiffs in that case argued the United States, as a non-party, could not appeal. We rejected this argument "by application of the classic *reductio ad absurdum* method." Id. We reasoned that: "To enjoin an act, the court must have jurisdiction of the [non-party] so enjoined. . . . Assuming arguendo that the court below had no such jurisdiction," denying the non-party an opportunity to appeal, and binding it to honor the order, "would in effect vest the court below with jurisdiction, by estoppel of the [non-party's] appeal, where none previously existed. Such a result is patently absurd." Id.

As in Walker Bank & Trust Co., the district court here exercised original jurisdiction over a non-party, the Tribe, not to enjoin an act, but to require an affirmative act by enforcing a subpoena. Assuming the district court had no jurisdiction to enforce Plaintiffs' subpoena against the Tribe because of tribal immunity, to deny the Tribe the opportunity to appeal and thereby vest the district court with jurisdiction over the Tribe by estoppel where no jurisdiction previously existed would be absurd. Furthermore, the Cohen requirements are met in this case. First, the order conclusively determines the disputed question of tribal immunity. Second, tribal immunity is an important issue completely separate from the merits of this case. Finally, the denial of tribal immunity is effectively unreviewable on appeal from a final judgment because, if the Tribe is entitled to immunity from a particular judicial process, this immunity is effectively lost as soon as the Tribe is subjected to that process. Moreover, given that tribal immunity is itself a

6

jurisdictional issue, the district court's denial of tribal sovereign immunity is an immediately appealable collateral order even where the tribe is a non-party. Thus, we have jurisdiction over this appeal and proceed.

## III.

We review de novo the legal question whether the Tribe, as a non-party, is entitled to tribal immunity from a subpoena duces tecum. See Ute Distrib. Corp. v. Ute Indian Tribe, 149 F.3d 1260, 1263 (10th Cir. 1998). The doctrine of tribal sovereign immunity dictates a federally recognized tribe "is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe v. Mfg. Techs., 523 U.S. 751, 754 (1998). The parties do not dispute the Tribe's entitlement to tribal immunity under this rule or that the Tribe's Energy and Minerals Department is indeed and arm of the Tribe. Nor do Plaintiffs argue congressional authorization or tribal waiver. Rather, the parties here dispute only whether a subpoena served on a non-party tribe in a civil case in federal court is a "suit" triggering tribal sovereign immunity in the absence of congressional authorization or tribal waiver. This is an issue of first impression in this Circuit.

## A.

Early American jurisprudence defined a "suit" as "the prosecution of some demand in a Court of justice." Cohens v. Virginia, 19 U.S. 264, 407 (1821). In Cohens, the Court described a suit as the instrument whereby an injured party is "put in possession of that right whereof [he] is deprived." Id. Further, the Court explained, one brings a suit against a state "for the purpose of establishing some claim against it by the

7

judgment of a Court." Id. at 408. A subpoena, on the other hand, merely compels the production of evidence, which the court needs in order to fully and fairly adjudicate this underlying claim or demand. See Fed. R. Civ. P. 45. The Supreme Court has avoided deciding whether a subpoena is a "suit" against a sovereign by limiting this form of discovery on narrower grounds. See, e.g., U.S. ex rel. Touhy v. Ragen, 340 U.S. 462, 467–68 (1951) (upholding a regulation prohibiting federal agency employees from releasing documents without consent of the agency head). Our precedent, however, leads to the logical conclusion that a subpoena duces tecum served directly on a tribe is a "suit" triggering tribal sovereign immunity.

In United States v. Murdock Mach. & Eng'g Co. of Utah, 81 F.3d 922 (10th Cir. 1996), we concluded "the term 'suit' embodies the broad principle that the government is not subject to 'legal proceedings, at law or in equity' or '*judicial process*' without its consent." Id. at 931 (emphasis added) (quoting Belknap v. Schild, 161 U.S. 10, 16 (1896)). We reasoned that "[i]nterpreting the term 'suit' broadly comports with the core notion of sovereign immunity that in the absence of governmental consent, the courts lack jurisdiction to 'restrain the government from acting, or to compel it to act.'" Id. (quoting Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 704 (1949)). We therefore held sovereign immunity rendered the United States immune from the automatic stays provided by Rules 401 and 601 of the Bankruptcy Act of 1898. Id. at 932. Furthermore, in Becker v. Kroll, 494 F.3d 904 (10th Cir. 2007), we acknowledged that "'[t]he issuance of a subpoena initiates an adversary process that can command the production of documents and things *only after judicial process is afforded*.'" Id. at 922

(emphasis added) (quoting <u>In re Subpoena Duces Tecum</u>, 228 F.3d 341, 348 (4th Cir. 2000)).

According to binding precedent then: tribes are immune from "suit" under <u>Kiowa</u>, "suit" includes "judicial process" under <u>Murdock</u>, and a subpoena duces tecum is a form of judicial process under <u>Becker</u>. The logical conclusion, therefore, is that a subpoena duces tecum served directly on the Tribe, regardless of whether it is a party to the underlying legal action, is a "suit" against the Tribe, triggering tribal sovereign immunity.

B.

Plaintiffs argue we should not apply precedent construing federal sovereign immunity to tribal immunity issues because tribal immunity is a separate and incongruent doctrine that the Supreme Court has recently criticized. True, "because of the peculiar 'quasi-sovereign' status of the Indian tribes, the Tribe's immunity is not congruent with that which the Federal Government, or the States, enjoy." <u>Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g</u>, 476 U.S. 877, 890 (1986); <u>see also</u> <u>Montana v. United States</u>, 450 U.S. 544, 563 (1981) ("Indian tribes have lost many of the attributes of sovereignty" by their incorporation into the United States,). Furthermore, although the Supreme Court created the doctrine of tribal immunity, the Court has acknowledged "there are reasons to doubt the wisdom of perpetuating the doctrine," and that it is "'founded upon an anachronistic fiction.'" <u>Kiowa</u>, 523 U.S. at 758 (quoting <u>Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma</u>, 498 U.S. 505, 514–15 (1991) (Stevens, J., concurring)). The Court has "retained the doctrine, however, on

9

the theory that Congress ha[s] failed to abrogate it in order to promote economic development and tribal self-sufficiency." Id. at 757.

We agree that many reasons exist to doubt the wisdom of perpetuating tribal immunity, at least as an overarching rule. But in order to hold the Tribe is not immune in this case, we would have to define the same term, "suit," to mean two different things, depending on whether judicial process is being exercised against the United States or an Indian tribe. This we are not inclined to do.

Plaintiffs also argue applying tribal immunity to the instant case would be inconsistent with Circuit Court precedent. Plaintiffs first point us to Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1154 (10th Cir. 2011), where we stated "[t]ribal immunity is similar, although not identical, to immunity afforded to states under the Eleventh Amendment. *The scope of tribal immunity, however, is more limited.*" Id. (emphasis added) (internal citations omitted); see also TTEA v. Ysleta del Sur Pueblo, 181 F.3d 676, 680 (5th Cir. 1999) ("There is no reason that the federal common law doctrine of tribal sovereign immunity, a distinct but similar concept, should extend further than the now-constitutionalized doctrine of state sovereign immunity."). Plaintiffs then point us to In re Missouri Dep't of Natural Res., 105 F.3d 434, 436 (8th Cir. 1997), where the Eighth Circuit rejected a non-party state agency's claim of immunity from discovery subpoenas, stating, "There is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court." Id.

True, in Crowe & Dunlevy, we said tribal immunity is more limited than the immunity afforded to the states under the Eleventh Amendment. We went on to explain,

however, that this was because, unlike Eleventh Amendment immunity, "tribal immunity is a matter of federal common law, not a constitutional guarantee, [and] its scope is subject to congressional control and modification." Crowe & Dunlevy, 640 F.3d at 1154. Furthermore, we are not bound by Missouri DNR. Rather, under our binding precedent—namely, Murdock and Becker—the Eleventh Amendment may well shield a state agency from discovery in federal court. As such, applying tribal immunity to bar the instant subpoena does not require holding the Tribe is entitled to any broader immunity than the States. Indeed, our holding here in no way affects Crowe & Dunlevy's accurate statement that tribal immunity remains more limited than Eleventh Amendment immunity because Congress may abrogate tribal immunity at any time.

C.

Only the Eighth Circuit has squarely addressed the issue before us; however, its holding is broader than ours today. In Alltel Commc'ns, LLC v. DeJordy, 675 F.3d 1100 (8th Cir. 2012), the Eighth Circuit reversed, based on tribal immunity, a district court's denial of a motion to quash a subpoena served on a non-party tribe *and* a non-party tribal official. Id. at 1106. Although recognizing "the answer to this issue is far from clear," the Eighth Circuit held "that a federal court's third-party subpoena in private civil litigation is a 'suit' that is subject to Indian tribal immunity." Id. at 1105. In reaching its decision, the court followed precedent from other circuits that construe federal sovereign immunity as covering non-party subpoenas served on federal officers and agencies. See id. at 1103. The Eighth Circuit recognized, however, that barring a third-party subpoena under *tribal* immunity is "far more unsettling":

11

Concluding that a third-party subpoena is a "suit" triggering the federal government's sovereign immunity is significant, but it does not give the Executive Branch a "blank check" to ignore third-party subpoenas because the agency response may be judicially reviewed under the Administrative Procedure Act, 5 U.S.C. § 702. Here, the Tribe's claim that tribal immunity confers the same grant of immunity from third-party judicial process is far more unsettling because the Tribe is not subject to the Administrative Procedure Act or to any comparable legislation containing a limited procedural waiver.

Id. at 1104.

The Eighth Circuit acknowledged it might be conferring "greater immunity [on Indian tribes] than that enjoyed by federal officers and agencies, or by the States, whose sovereign immunity is protected by the Eleventh Amendment." Id. Nevertheless, the court concluded, "permitting broad third-party discovery in civil litigation threatens to contravene federal policies of tribal self-determination, economic development, and cultural autonomy that underlie the federal doctrine of tribal immunity." Id. The court reasoned, "even if denying Alltel the discovery it seeks in this case works some inconvenience, or even injustice, it is too late in the day, and certainly beyond the competence of this court, to take issue with a doctrine so well-established." Id. at 1106 (internal quotation marks omitted).

Although we agree with the Eighth Circuit's holding as to the immunity enjoyed by the Tribe itself, we need not decide whether a tribal official is also immune from an appropriate federal discovery request. Indeed, we see no reason why an Indian tribe should be able to "shut off an appropriate judicial demand for discovery" served on a tribal official, rather than against the Tribe itself. See Touhy, 340 U.S. at 472

12

(Frankfurter, J., concurring).[1] As such, we do not share the Eighth Circuit's apprehensions over holding that subpoena duces tecum served against the Tribe itself is a "suit" triggering tribal sovereign immunity.

Accordingly, the district court's denial of the Tribe's motion to quash is hereby REVERSED.

---

[1] For example, under Ex parte Young, 209 U.S. 123 (1908), which applies with equal force against both state and tribal officials under Crowe & Dunlevy, 640 F.3d at 1154, neither a state nor a tribe would appear to be immune from a discovery request served on the appropriate agency official, rather than on the agency itself, although other privileges or protections may apply.

True, the Supreme Court has held: "The general rule is that a suit is against the sovereign 'if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" Dugan v. Rank, 372 U.S. 609, 620 (1963) (quoting Land v. Dollar, 330 U.S. 731, 738 (1947); Larson, 337 U.S. at 704). If a subpoena were served on a tribal official, rather than the Tribe, however, neither Dugan nor Larson would be triggered, as "[t]he Ex parte Young exception proceeds on the fiction that an action against a state official seeking only prospective injunctive relief is not an action against the state and, as a result, is not subject to the doctrine of sovereign immunity." Crowe & Dunlevy, 640 F.3d at 1154 (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 105 (1984)). We need not decide these issues now, however, as Plaintiffs here served a Tribal agency, rather than a tribal official or state agency or official.

13