**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-0317**
**A24-0319**

In the Matter of the Welfare of: J.A.D., Child (A24-0317),

State of Minnesota,
Respondent,

vs.

Patrick Junior Jordan,
Respondent,

Lower Sioux Indian Community,
Appellant (A24-0319).

**Filed September 30, 2024**
**Reversed and remanded**
**Schmidt, Judge**

Redwood County District Court
File Nos. 64-JV-22-77, 64-CR-23-208

Christa Groshek, Aaron Roy, Groshek Law PA, Minneapolis, Minnesota (for respondent J.A.D.)

Jenna M. Peterson, Redwood County Attorney, Redwood Falls, Minnesota; and

Travis J. Smith, Special Assistant County Attorney, Slayton, Minnesota (for respondent State of Minnesota)

Joel A. Franklin, Woodbury, Minnesota (for respondent Patrick Junior Jordan)

Vanya S. Hogen, Samantha Hermsen, Lorenzo E. Gudino, Ellen Currier, Hogen Adams PLLC, St. Paul, Minnesota (for appellant)

Greg S. Paulson, Brodeen & Paulson, PLLP, New Brighton, Minnesota (for amici curiae Shakopee Mdewakanton Sioux Community, Fond du Lac Band of Lake Superior Chippewa, Grand Portage Band of Lake Superior Chippewa, Leech Lake Band of Ojibwe, Mille Lacs Band of Ojibwe, Prairie Island Indian Community, Upper Sioux Community, and White Earth Band of Ojibwe)

Blue Bird Thomas, Shakopee Mdewakanton Sioux Community, Prior Lake, Minnesota (for amicus curiae Shakopee Mdewakanton Sioux Community)

Sean Copeland, Fond du Lac Legal Affairs Office, Cloquet, Minnesota (for amicus curiae Fond du Lac Band of Lake Superior Chippewa)

Joseph F. Halloran, Jacobson, Magnuson, Anderson & Halloran, P.C., St. Paul, Minnesota (for amicus curiae Grand Portage Band of Lake Superior Chippewa)

Christopher Murray, Leech Lake Band of Ojibwe, Cass Lake, Minnesota (for amicus curiae Leech Lake Band of Ojibwe)

Angel Daher, Department of Justice, Mille Lacs Band of Ojibwe, Onamia, Minnesota (for amicus curiae Mille Lacs Band of Ojibwe)

Jessie Stomski Seim, Prairie Island Indian Community, Welch, Minnesota (for amicus curiae Prairie Island Indian Community)

Leif E. Rasmussen, Rasmussen Law, Edina, Minnesota (for amicus curiae Upper Sioux Community)

Andrea Kingbird, White Earth Band of Ojibwe, White Earth, Minnesota (for amicus curiae White Earth Band of Ojibwe)

Robert Small, Executive Director, Minnesota County Attorney's Association, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for amicus curiae Minnesota County Attorney's Association)

Considered and decided by Ross, Presiding Judge; Ede, Judge; and Schmidt, Judge.

**SYLLABUS**

A subpoena constitutes a "suit" for purposes of the analysis of whether a Tribe is entitled to sovereign immunity.

2

# OPINION

**SCHMIDT**, Judge

In these consolidated appeals, appellant challenges two orders denying motions to quash subpoenas served upon tribal social workers compelling their testimony at a juvenile-delinquency proceeding (A24-0317) and a criminal trial (A24-0319). Because the district court erred in determining that the tribal social workers were not entitled to sovereign immunity, we reverse and remand with instructions for the district court to enter orders quashing the subpoenas.

## FACTS

### *The Lower Sioux Indian Community.*

Appellant Lower Sioux Indian Community (Lower Sioux) is a federally recognized Indian Tribe. *See Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs*, 88 Fed. Reg. 54654, 54656 (Aug. 11, 2023). Lower Sioux Family Services—overseen by a subdivision of the Tribe—employs social workers who provide services for all aspects of child-protection cases.

### *The subpoena issued in the extended juvenile jurisdiction matter (A24-0317).*

Respondent State of Minnesota charged J.A.D. with multiple offenses. The matter was designated for extended juvenile jurisdiction and the case set for trial. The state subpoenaed several social workers from Lower Sioux Family Services to testify at trial. Lower Sioux's counsel contacted the Assistant Redwood County Attorney to explain the Tribe's objection to the subpoenas. Without addressing the objection, the prosecutor sent an e-mail to Lower Sioux's counsel noting that the state had reissued the subpoenas.

3

Lower Sioux filed a motion to quash the subpoenas, arguing that the social workers are tribal officials who share the Tribe's unwaived sovereign immunity from suit for acts performed within their official capacities. Each social worker provided an affidavit, attesting that they were employed by Lower Sioux Family Services and that "[t]he only knowledge [they] would have regarding the facts underlying the State of Minnesota's criminal complaint against [J.A.D.] would have been gained through [their] official capacity." The state opposed the motion and the district court held a hearing.

### *The subpoena issued in the adult criminal matter (A24-0319).*

After the state charged Patrick Junior Jordan with multiple offenses, the prosecutor subpoenaed a social worker from Lower Sioux Family Services to testify at trial. Lower Sioux's counsel contacted the Assistant Redwood County Attorney, explained the Tribe's objection to the subpoena, and informed the prosecutor that the Tribe would voluntarily produce the witness if the state withdrew the subpoena. After the prosecutor refused to withdraw the subpoena, Lower Sioux filed a motion to quash.

Lower Sioux again argued that the social worker is a tribal official who shares the Tribe's unwaived sovereign immunity from suit for acts performed within his official capacity. The social worker's affidavit attested that he worked for Lower Sioux Family Services and that his knowledge about the facts in the complaint arose only from the work he performed within his official capacity. The state opposed the motion to quash and the district court held a hearing.

4

***The district court's orders on the Tribe's motions to quash.***

The district court issued two, nearly identical, orders denying Lower Sioux's motions to quash the subpoenas. The district court noted that Lower Sioux is a federally recognized Indian Tribe and all of the subpoenaed social workers' knowledge underlying the alleged crimes arose exclusively from their employment with, and job duties on behalf of, the Tribe. The court also recognized that tribal members are generally insulated from the application of state law while on their reservations. After discussing the relevant law, the district court, in both orders, concluded:

> In sum, Congress has abrogated sovereign immunity through the enactment of federal criminal statutes extending to Indian country,[1] and because that exercise of criminal jurisdiction necessarily includes every aspect of criminal procedure applicable to the prosecution of such crimes, when Congress granted criminal jurisdiction under [Public Law] 280[2] to portions of the State of Minnesota, it necessarily included a grant of every aspect of criminal procedure necessary for the prosecution and defense of such crimes. This would include the power of the State, any defendant, and any grand jury to subpoena witnesses under [Minn. R. Crim. P.] 22.

Lower Sioux appealed both orders, which we consolidated on appeal.[3]

---

[1] "Indian country" is a defined term in federal law. 18 U.S.C. § 1151 (2018).

[2] Public Law 280 is codified at 18 U.S.C. § 1162 (2018).

[3] Lower Sioux first filed a petition for a writ of prohibition in each case. This court denied those petitions because the Tribe had an adequate remedy via appeal. *See In re Welfare of J.A.D. (In re Lower Sioux Indian Community)*, No. A24-0057 (Minn. App. Feb. 13, 2024) (order); *State v. Jordan (In re Lower Sioux Indian Community)*, No. A24-0211 (Minn. App. Feb. 16, 2024) (order).

**ISSUES**

I.     Did the district court err in determining that Public Law 280 abrogated Lower Sioux's sovereign immunity?

II.    Are subpoenas "suits" for purposes of the application of a Tribe's sovereign immunity?

III.   Are Lower Sioux Family Services social workers tribal "officials" such that they are entitled to sovereign immunity?

**ANALYSIS**

We review a district court's decision on a motion to quash a subpoena for abuse of discretion. *In re Disciplinary Action Against Coleman*, 793 N.W.2d 296, 303 (Minn. 2011). Within the abuse-of-discretion standard, this court reviews a district court's legal conclusions de novo. *Houck v. Houck*, 979 N.W.2d 907, 910 (Minn. App. 2022). The application of sovereign immunity is a question of law that we review de novo. *Nichols v. State*, 858 N.W.2d 773, 775 (Minn. 2015).

**I.    Public Law 280 does not abrogate sovereign immunity.**

Lower Sioux argues that the district court erred in concluding that Congress abrogated the Tribe's sovereign immunity by enacting Public Law 280 and granting the State of Minnesota jurisdiction over criminal matters. The state contends that the district court properly determined that Public Law 280 abrogated sovereign immunity and argues that Congress's extension of criminal jurisdiction to the state into tribal land inherently included every aspect of criminal procedure, such as the power to compel testimony from witnesses through a subpoena.

6

"Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991). Tribes are "separate sovereigns pre-existing the Constitution" and remain a "separate people, with the power of regulating their internal and social relations." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 55-56 (1978) (quotation omitted). Among the core aspects of sovereignty that Tribes possess is the "common-law immunity from suit traditionally enjoyed by sovereign powers[,]" which is "a necessary corollary to Indian sovereignty and self-governance." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (quotations omitted). Tribal sovereign immunity applies "to suits brought by States[,]" and is "not subject to diminution by the States." *Id.* at 789. "Although Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends to undermine Indian self-government." *Id.* at 790.

Tribes are entitled to sovereign immunity unless the Tribe has unequivocally waived its immunity or Congress has expressly abrogated the immunity. *Hegner v. Dietze*, 524 N.W.2d 731, 733 (Minn. App. 1994).[4] To "abrogate sovereign immunity," Congress must make its intent "unmistakably clear in the language of the statute." *Fin. Oversight & Mgmt. Bd. for P.R. v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 346 (2023) (quotation omitted). Courts "will not find an abrogation of tribal sovereign immunity unless Congress has conveyed its intent to abrogate in unequivocal terms." *Lac du*

---

[4] The state appropriately conceded, and our careful review of the record confirms, that Lower Sioux did not waive its sovereign immunity. As such, Lower Sioux is entitled to immunity from suit unless Public Law 280 abrogated the Tribe's sovereign immunity.

7

*Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 385 (2023).

As the United States Supreme Court has noted, "That is a high bar." *Id.*

In Public Law 280, Congress empowered certain states to exercise criminal jurisdiction over "matters occurring within Indian country[.]" *Gavle v. Little Six, Inc.*, 555 N.W.2d 284, 289 (Minn. 1996) (citing 18 U.S.C. § 1162 (1994)). Minnesota is one of six states that Congress has granted

> jurisdiction over offenses committed by or against Indians in the areas of Indian country . . . to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory[.]

18 U.S.C. § 1162.[5] Congress's primary concern in enacting Public Law 280 was to address "the problem of lawlessness on certain Indian reservations" by providing the states with criminal jurisdiction over offenses committed by or against Indians on reservations. *Bryan v. Itasca County*, 426 U.S. 373, 379 (1976).

But a law granting jurisdiction does not necessarily abrogate a Tribe's sovereign immunity or ability to assert the affirmative defense of sovereign immunity. *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786 n.4 (1991) ("The fact that Congress grants jurisdiction to hear a claim does not suffice to show Congress has abrogated all *defenses* to that claim.") (emphasis in original); *Gavle*, 555 N.W.2d at 288 ("[T]he concept [of tribal sovereign immunity] is more properly thought of as an affirmative

---

[5] This congressional grant of jurisdiction does not apply to the Red Lake Reservation. *See* 18 U.S.C. § 1162 (expressly exempting the Red Lake Reservation).

defense, to be asserted by a tribe, tribal official or tribal entity as a bar to a particular lawsuit."). Subject-matter jurisdiction and sovereign immunity are "wholly distinct" concepts. *Blatchford*, 501 U.S. at 786 n.4; *In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304-05 (8th Cir. 1994) ("[s]overeign immunity . . . is not of the same character as subject matter jurisdiction [and is a] jurisdictional consideration separate from subject matter jurisdiction"); *Gavle*, 555 N.W.2d at 288 (distinguishing jurisdiction and immunity).

Thus, while Congress, through Public Law 280, provided the State of Minnesota with jurisdiction over criminal matters in Indian country, that grant of jurisdiction is immaterial to the analysis of whether Congress abrogated the Tribe's sovereign immunity. *See Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 892 (1986) ("We have never read Pub. L. 280 to constitute a waiver of tribal sovereign immunity, nor found Pub. L. 280 to represent an abandonment of the federal interest in guarding Indian self-governance."); *California ex rel. Cal. Dep't of Fish & Game v. Quechan Tribe of Indians*, 595 F.2d 1153, 1156 (9th Cir. 1979) ("Neither the express terms of 18 U.S.C. § 1162, nor the Congressional history of the statute, reveal any intention by Congress for it to serve as a waiver of a Tribe's sovereign immunity."). Even if the provision of jurisdiction under Public Law 280 inherently grants the state authority to subpoena witnesses—as argued by the state in this appeal—that grant of jurisdiction and power does not equate to an express abrogation of the Tribe's sovereign immunity or limit the Tribe's ability to raise the affirmative defense of sovereign immunity.

In *Gavle*, for example, the Minnesota Supreme Court determined that the court had jurisdiction to hear the civil dispute but that the tribal business entity was entitled to

9

sovereign immunity from a state court civil action. 555 N.W.2d at 290-91, 296. The court recognized that "state court jurisdiction over tribal activities that took place within Indian country would undermine the congressional aim of encouraging self-government and self-determination by the dependent tribes and infringe on the right of the Indians to govern themselves." *Id.* at 289 (quotations omitted). The supreme court held that the congressional grant of jurisdiction to the State of Minnesota in Public Law 280 did not expressly abrogate the Tribe's ability to assert—and the correlating duty of a state court to recognize and respect—the affirmative defense of sovereign immunity. *Id.* at 289, 292-96.

This court has similarly recognized that "[w]hile Public Law 280 applies to actions involving 'Indians,' this grant of jurisdiction does not apply to Indian *tribes*, thus preserving the vitality of Indian sovereignty[.]" *Cohen v. Little Six, Inc.*, 543 N.W.2d 376, 381 (Minn. App. 1996) (emphasis in original), *aff'd*, 561 N.W.2d 889 (Minn. 1997); *see also Diver v. Peterson*, 524 N.W.2d 288, 291 (Minn. App. 1994) ("Public Law 280 certainly does not constitute a governing Act of Congress which validates . . . interference with tribal immunity and self-government.") (internal quotations omitted) (quoting *Three Affiliated Tribes*, 476 U.S. at 892), *rev. denied* (Minn. Feb. 14, 1995). We have also acknowledged that Public Law 280 "was intended to supplement tribal institutions, not limit them," and, thus, we concluded that "Public Law 280 has not abrogated the [T]ribe's sovereign immunity[.]" *Diver*, 524 N.W.2d at 291, 292.

Although the cited cases arose within the civil arena, the state's ability to exercise jurisdiction in the criminal context is no different for purposes of analyzing the defense of sovereign immunity. In both civil and criminal circumstances, the Tribe is a sovereign

nation and must be so treated absent an express abrogation of sovereign immunity by Congress or waiver by the Tribe of its sovereign immunity. Criminal cases may include additional concerns—like the potential implication of a defendant's Sixth Amendment right to confront witnesses—but any such result flows from the judgment of Congress (in not expressly abrogating sovereign immunity) or in the Tribe (in not waiving immunity). Binding authority from the United States Supreme Court, the Minnesota Supreme Court, and our court has recognized that Public Law 280 does not represent an express abrogation of tribal sovereign immunity. *See Three Affiliated Tribes*, 476 U.S. at 892; *Gavle*, 555 N.W.2d at 289, 296; *Diver*, 524 N.W.2d at 291-92. Even if we were able, we see no reason to deviate from those established authorities.

The state contends that the congressional grant of jurisdiction to the State of Minnesota to enact and enforce criminal laws necessarily means the state has the power to compel witnesses to testify. But the precise language of Public Law 280 upon which the state relies for this assertion provides: "the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory[.]" 18 U.S.C. § 1162. Nothing in this language demonstrates Congress made its intent "*unmistakably clear*" that the Tribes within Minnesota no longer have sovereign immunity in state court for state initiated criminal proceedings. *Coughlin*, 599 U.S. at 387 (emphasis added). The United States Supreme Court has set a "high bar" for Congress to abrogate a Tribe's sovereign immunity. *Id.* at 385. The language Congress used in Public Law 280 simply does not clear that hurdle.

11

The foundation of the state's argument is akin to a federal preemption analysis based upon so-called "field preemption." "Field preemption occurs when federal law occupies a field of regulation so comprehensively that it has left no room for supplementary state legislation." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 479 (2018) (quotations omitted). In such circumstances, state laws must yield to federal law. *Id.* Within a field preemption analysis, a court must determine whether the congressional act "manifest[s] the intention to occupy the entire field" such that the only logical inference left is that the state has no room to legislate the same subject. *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 631 (2012) (quotation omitted).

Here, the state essentially contends that Public Law 280 completely occupies the field of criminal law such that the only logical inference is that Congress left no room for a Tribe to assert sovereign immunity over any matter within any criminal proceeding initiated by the State of Minnesota. But, unlike federal field preemption that draws *inferences* from a congressional act, occupying the "field of a matter" is insufficient to abrogate a Tribe's sovereign immunity. Instead, Congress's intent to abrogate tribal sovereign immunity must be *express* within the language of the statute. *Coughlin*, 599 U.S. at 387; *Martinez*, 436 U.S at 59.[6] While Public Law 280 grants the State of Minnesota

---

[6] To continue the federal preemption analogy, the analysis to determine whether Congress intended to abrogate tribal sovereign immunity is more akin to an "express preemption" analysis. In applying an "express preemption" analysis, courts look no further than the plain language of the federal statute to determine if Congress preempted state law by stating its intent to preempt "in express terms[.]" *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203 (1983); *see also CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) ("If the statute contains an express pre-emption

jurisdiction to prosecute criminal conduct on tribal land, it does not "expressly," "unmistakably," "unambiguously," and "unequivocal[ly]" abrogate tribal sovereignty. *Coughlin*, 599 U.S. at 385, 387. We, therefore, conclude that the district court erred in determining that Public Law 280 abrogates tribal sovereign immunity.

## II. Subpoenas are "suits" for purposes of an analysis of whether a Tribe or tribal official is entitled to sovereign immunity.

Among the core aspects of tribal sovereign immunity is the "common-law immunity from *suit* traditionally enjoyed by sovereign powers." *Bay Mills*, 572 U.S. at 788 (emphasis added). As such, Lower Sioux and its tribal officials are entitled to sovereign immunity in these appeals only if a subpoena constitutes a "suit." *Id.*

The district court did not squarely address whether the subpoenas issued to the Lower Sioux social workers constitute "suits." On appeal, the parties dispute whether a subpoena constitutes a "suit" for the purposes of a sovereign-immunity analysis. This question has not been resolved by this court or by the Minnesota Supreme Court. The parties, therefore, cite to persuasive, but nonbinding, authorities.

Lower Sioux relies on *Alltel Communications, LLC v. DeJordy* in support of its argument that a subpoena is a "suit" for purposes of a sovereign-immunity analysis. 675 F.3d 1100 (8th Cir. 2012). In *DeJordy*, third-party subpoenas duces tecum were served on the Oglala Sioux Tribe and a tribal administrator in a civil lawsuit by Alltel against

---

clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent."). Looking at the plain language of Public Law 280, there is no express abrogation of the Tribe's sovereign immunity. *See* 18 U.S.C. § 1162.

DeJordy, Alltel's former vice president. *Id.* at 1101. Alltel's complaint alleged DeJordy breached a separation agreement by assisting the Oglala Sioux Tribe in a lawsuit filed by the Tribe to enjoin Alltel from selling assets used to provide services on the Pine Ridge Indian Reservation. *Id.* The third-party subpoenas sought documents from the Tribe and the tribal administrator that might establish a connection between DeJordy and the Tribe's lawsuit against Alltel. *Id.* at 1102. Relying on its sovereign immunity, the Tribe moved to quash the subpoenas. *Id.* The district court denied the motion and the Tribe appealed. *Id.*

In reversing, the Eighth Circuit Court of Appeals concluded that a third-party subpoena "is a 'suit' that is subject to Indian tribal immunity." *Id.* at 1105. The Eighth Circuit noted that the United States Supreme Court had explained that "'a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.'" *Id.* at 1102 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). Because there was no express waiver or congressional abrogation of sovereign immunity, the Eighth Circuit concluded that the district court erred by denying the Tribe's motion to quash the subpoena. *Id.* at 1106.

Besides the Eighth Circuit, other courts have concluded that a subpoena is a "suit" for purposes of a tribal sovereign-immunity analysis. In *Russell v. Jones*, for example, the Fifth Circuit Court of Appeals addressed circumstances of subpoenas served upon county

14

court judges in Texas. 49 F.4th 507, 510-11 (5th Cir. 2022).[7] The state judges moved to quash the subpoenas, contending, among other theories, that the judges were entitled to sovereign immunity. *Id.* at 511. The United States District Court for the Southern District of Texas denied the motion to quash on sovereign-immunity grounds. *Id.* at 509, 511.

In addressing whether the third-party subpoenas were "suits" that were barred by sovereign immunity, the Fifth Circuit determined that sovereign immunity applies to government officials as third parties, not just as defendants. *Id.* at 514. The court further noted that "sovereign immunity is an immunity from *suit* (including discovery), not just liability." *Id.* (emphasis in original). The circuit court also recognized that the interests that sovereign immunity protects—the sovereign's dignity and authority over its prerogatives—are not diminished "when a sovereign is served with a *subpoena duces tecum* instead of a complaint." *Id.* at 515. The Fifth Circuit concluded that state sovereign immunity barred the third-party subpoenas. *Id.* at 515, 518-19.

Similarly, in *Bonnet v. Harvest (U.S.) Holdings, Inc.*, the Tenth Circuit addressed a nonparty subpoena duces tecum that was served on a Tribe. 741 F.3d 1155, 1156-57 (10th Cir. 2014). Asserting sovereign immunity, the Tribe moved to quash the subpoena. *Id.* at 1157. The district court denied the motion to quash and the Tribe appealed. *Id.*

---

[7] The *Russell* decision provides a useful comparison as both tribes and states are sovereigns. But we note that tribes are more akin to foreign nations and are not the equivalent of a state or a county. *See Gavle*, 555 N.W.2d at 289 ("Indian tribes are not states; nevertheless, they possess a kind of sovereignty *superior to that of states* but inferior to that of the federal government.") (emphasis added).

In reversing, the Tenth Circuit adopted a definition of "suit" that "embodies the broad principle that the government is not subject to legal proceedings, at law or in equity[,] or *judicial process* without its consent." *Id.* at 1159 (emphasis in original) (quotations omitted). The court concluded that

> tribes are immune from "suit" . . . , "suit" includes "judicial process" . . . , and a subpoena duces tecum is a form of judicial process[.] The logical conclusion, therefore, is that a subpoena duces tecum served directly on the Tribe, regardless of whether it is a party to the underlying legal action, is a "suit" against the Tribe, triggering tribal sovereign immunity.

*Id.* at 1160.

The state argues that *Bonnet* does not support Lower Sioux's argument because the *Ex parte Young*[8] exception applies to a third-party subpoena served on a tribal official. The state derives this argument from dicta in a footnote in *Bonnet* in which the Tenth Circuit

---

[8] In *Ex parte Young*, the United States Supreme Court held that the State of Minnesota's immunity under the Eleventh Amendment—which prohibits "suits" against states—does not bar suits seeking declaratory and injunctive relief for violations of federal law (rather than suits seeking monetary damages) against state officers acting in their official capacities. *Ex parte Young*, 209 U.S. 123, 150-68 (1908); *see also* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). A later Supreme Court case characterized the analysis of the *Ex parte Young* exception as "a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Courts have applied the *Ex parte Young* exception within the analysis of tribal sovereign immunity. *See N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty.*, 991 F.2d 458, 460 (8th Cir. 1993).

speculated whether the Supreme Court's definition of "suit"[9] would apply if a subpoena were served on a tribal official, rather than on the Tribe itself. *Id.* at 1162 n.1. The court reasoned that the *Ex parte Young* exception "proceeds on the fiction that an action against a state official seeking only prospective injunctive relief is not an action against the state and, as a result, is not subject to the doctrine of sovereign immunity." *Id.* (quotation omitted). But the court expressly left the question open. *Id.* at 1162 ("we need not decide whether a tribal official is also immune from an appropriate federal discovery request.").

We are not persuaded that the *Ex parte Young* exception applies to third-party subpoenas served on tribal officials. While the doctrine may proceed on the "fiction" referenced by the Tenth Circuit in *Bonnet*, that fiction does not dictate the application of the exception because the Supreme Court later articulated a specific inquiry for courts to undertake in determining whether the doctrine applies. *See Verizon Md.*, 535 U.S. at 645. Because there is no alleged "ongoing violation of federal law" against the tribal officials and the third-party subpoenas here do not constitute a form of "relief properly characterized as prospective," the *Ex parte Young* exception does not apply to the subpoenas served in these cases. *Id.* Instead, these subpoenas seek to compel the officials' presence for the purpose of providing testimony in the criminal proceedings.

The state also cites an Eighth Circuit Court of Appeals decision to contend that the civil subpoena proceedings addressed in *DeJordy* are not determinative of whether the

---

[9] *See Dugan*, 372 U.S. at 620 (defining "suit" as being "against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, . . . or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act") (quotations and citation omitted).

subpoenas in these criminal matters constitute "suits" for purposes of sovereign immunity. *See In re Long Visitor*, 523 F.2d 443 (8th Cir. 1975). In *Long Visitor*, the Eighth Circuit concluded that tribal sovereign immunity did not bar subpoenas to compel testimony at grand jury proceedings because "the extension by Congress of federal jurisdiction to crimes committed on Indian reservations inherently includes every aspect of federal criminal procedure applicable to the prosecution of such crimes." *Id.* at 446. Although the court's language, on its face, appears to support the state's argument, *Long Visitor* is readily distinguishable based upon the law and the facts.

In *Long Visitor*, the Eighth Circuit addressed circumstances of a federal grand jury subpoena in a federal criminal case. *Id.* The witnesses were not immune from the federal grand jury subpoenas compelling their testimony because of a congressional grant of jurisdiction to the federal government. *Id.* (citing 18 U.S.C. § 1153). But unlike the State of Minnesota, the United States sits as a "superior sovereign" to tribes. *See Gavle*, 555 N.W.2d at 289 ("tribes . . . possess a kind of sovereignty superior to that of states but inferior to that of the federal government."). Tribes are "subordinate and dependent nations possessed of all powers as such and limited only to the extent that they have expressly been required to surrender their powers by the superior sovereign, the United States." *Id.* (quotations and brackets omitted); *see also Bay Mills*, 572 U.S. at 788-89 (concluding that Tribes possess "the common-law immunity from suit traditionally enjoyed by sovereign powers[,]" which "applies no less to suits brought by States (including in their own courts) than to those by individuals"); *Cohen*, 543 N.W.2d at 380 ("By virtue of the United States Constitution, the federal government enjoys paramount authority over Indian tribes.").

18

Thus, *Long Visitor* is legally distinguishable because a congressional grant of jurisdiction to the federal government is not equal to a congressional grant of jurisdiction to a state government. Even though the State of Minnesota, like the federal government, has jurisdiction to prosecute crimes occurring on some reservations, Minnesota is simply not on equal footing compared to the United States.

Besides the federal-versus-state legal distinction, *Long Visitor* is factually distinguishable. The tribal members that were subpoenaed in the federal grand jury proceedings in *Long Visitor* were not tribal officials who asserted sovereign immunity as a defense. 523 F.2d at 445. Nor were they subpoenaed to testify about facts the witnesses gained solely within their official capacity. *Id.* Instead, the witnesses were subpoenaed before a federal grand jury to provide eyewitness testimony regarding the murders they allegedly witnessed. *Id.* Thus, the federal government possessed the power to subpoena the individual tribal members for the federal grand jury proceedings. *Id.* at 447. *Long Visitor* has no application to the legal analysis, or the application of the facts to the law, that we must perform with regard to the subpoenas involved in these consolidated cases.

Instead, we agree with the persuasive authorities that broadly define the term "suit" as including any adversarial or judicial process. *See DeJordy*, 675 F.3d at 1106; *Russell*, 49 F.4th at 518-19; *Puerto Rico v. United States*, 490 F.3d 50, 61 n.6 (1st Cir. 2007) ("[W]here a subpoena is issued to a non-party federal government agency in conjunction with litigation in state court, the state court may not enforce the subpoena against the federal government due to federal sovereign immunity"); *In re Elko Cnty. Grand Jury*, 109 F.3d 554, 556-57 (9th Cir. 1997) (applying sovereign immunity to affirm order quashing

19

state-court subpoena served upon forest service employee to testify before grand jury); *Houston Bus. J., Inc. v. Off. of Comptroller*, 86 F.3d 1208, 1211 (D.C. Cir. 1996) ("In state court the federal government is shielded by sovereign immunity, which prevents the state court from enforcing a subpoena."); *Edwards v. United States Dep't of Justice*, 43 F.3d 312, 317 (7th Cir. 1994) (quashing criminal defendant's state-court subpoena served upon Department of Justice based upon sovereign immunity); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70-71 (4th Cir. 1989) ("Even though the government is not a party to the underlying action, the nature of the subpoena proceeding against a federal employee to compel him to testify about information obtained in his official capacity is inherently that of an action against the United States[.]").

We are also persuaded by the courts that have concluded a subpoena constitutes a "suit" for purposes of a sovereign immunity analysis. *See, e.g.*, *DeJordy*, 675 F.3d at 1105-06. In reaching that conclusion, those courts have generally analyzed whether a judgment from the pleading—there, a subpoena—would "restrain the [Tribe] from acting, or compel it to act." *Id.* (quoting *Dugan*, 372 U.S. at 620). The subpoenas issued in these cases meet that definition as they compelled the tribal social workers to appear to testify in state criminal proceedings. And the social workers' failure to comply with the subpoena would have subjected the witnesses to contempt proceedings.[10] It is that compulsory power—and the supporting availability of contempt proceedings to enforce them upon a witness's failure to comply—that makes subpoenas a "suit." Because a subpoena compels

---

[10] *See* Minn. R. Crim. P. 22.05. In fact, the subpoenas in this record explicitly warn that "failure to obey a subpoena without being excused is a contempt of court."

an action and can be enforced via contempt proceedings, we hold that a subpoena constitutes a "suit" for purposes of the sovereign-immunity analysis.

### III. The social workers are officials entitled to sovereign immunity.

Although we have resolved the question of whether Congress has abrogated Lower Sioux's sovereign immunity (it did not) and the question of whether a subpoena constitutes a suit (it does) such that the Tribe can properly assert its sovereign immunity (it can), our analysis is not at an end. The tribal social workers are entitled to immunity only if they were "tribal officials acting in their official capacity and within their scope of authority." *Hegner*, 524 N.W.2d at 735 (citing *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479-80 (9th Cir. 1985)); *see also Otterson v. House*, 544 N.W.2d 64, 66 (Minn. App. 1996) ("Sovereign immunity extends to tribal officials acting within their scope of authority."), *rev. denied* (Minn. Apr. 26, 1996). Although not litigated below, the state now contends that the record presented to the district court does not support a determination that the social workers were "officials" who acted within their "official capacity" such that they were entitled to sovereign immunity.[11]

---

[11] Lower Sioux argues that the state forfeited this argument because the state raised the issue for the first time on appeal. The state concedes that the issue was not litigated before the district court but contends that it may raise this alternative argument on appeal as there are sufficient facts in the record to consider the theory, there is legal support for the argument, and deciding this case on the alternative grounds would not expand the relief previously granted. We agree with the state and conclude that the issue is not forfeited. *See State v. Grunig*, 660 N.W.2d 134, 137 (Minn. 2003) ("A respondent can raise alternative arguments on appeal in defense of the underlying decision when there are sufficient facts in the record for the appellate court to consider the alternative theories, there is legal support for the arguments, and the alternative grounds would not expand the relief previously granted."); *see also* Minn. R. Crim. P. 29.04; *State v. Larson*, 389 N.W.2d

The resolution of the question of whether an individual acted within their official capacity and, therefore, is protected by sovereign immunity turns on who is the "real party in interest." *Lewis v. Clarke*, 581 U.S. 155, 163 (2017) ("The identity of the real party in interest dictates what immunities may be available."). Answering this question requires an analysis of "the relief sought" and whether "the decree would operate against" the sovereign. *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1296-97 (10th Cir. 2008). In determining who is the "real party in interest," courts do not rely on the characterization of the parties but "determine in the first instance whether the remedy sought is truly against the sovereign." *Lewis*, 581 U.S. at 162. This analysis is apt to our resolution of these cases because the general rules that apply to immunity against suits for state and federal officials also apply to sovereign immunity against suits for tribal officials. *Id.* at 163-64 ("The protection offered by tribal sovereign immunity . . . is no broader than the protection offered by state or federal sovereign immunity."). The determinative question is whether the suit involves an official capacity or individual capacity. *Id.* at 163.

Sovereign immunity does not categorically extend to an individual simply because they are employed by the Tribe. *Id.* at 167-68. In line with the United States Supreme Court's decision in *Lewis*, we have previously recognized the distinction between tribal

872, 875 n.5 (Minn. 1986) ("The court may permit a respondent, without filing a cross-appeal, to defend a decision of judgment on any ground that the law and record permit that would not expand the relief he has been granted."); *Holen v. Minneapolis-St. Paul Metro. Airports Comm'n*, 84 N.W.2d 282, 286 (Minn. 1957) ("[A]n appellate court may base its decision upon a theory not presented to or considered by the trial court *where the question raised for the first time on appeal is plainly decisive of the entire controversy on its merits, and where . . . [t]here is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on the question.*") (emphasis in original).

22

employees and tribal officials for the purposes of whether sovereign immunity applies. While sovereign immunity does not extend to all tribal employees, *Otterson*, 554 N.W.2d at 66-67, it extends to tribal officials, *Hegner*, 524 N.W.2d at 735.

In *Otterson*, we addressed a suit against an employee of the Fond du Lac Development Corporation, a tribally chartered, tribally owned corporate subdivision of the Fond Du Lac Band. *Id.* at 65. The suit alleged the employee, a security guard, was negligent while delivering mail off the reservation to the United States Post Office in Cloquet, Minnesota. *Id.* Although the employee was acting within the scope of his employment for the Tribe by delivering the mail to the post office, he was not entitled to sovereign immunity because his actions did not call on him to "rely on a delegation of tribal authority" and did "not relate to policymaking." *Id.* at 66.

Unlike the employee in *Otterson*, the social workers involved here rely on a delegation of tribal authority in providing the services required from their positions. For example, the supervising social worker in the extended juvenile jurisdiction "oversee[s] all child-protection cases; participate[s] in investigations, case management, and placement determinations; and supervise[s] Family Services social workers in their provision of services and referrals." The social workers themselves "provide services and referrals for child-protection cases, and participate in investigations, case management, and placement determinations, among other duties and responsibilities."

These duties, as detailed in affidavits by the social workers, distinguish the witnesses here from individuals engaged in "ministerial" employment that this court has determined does not warrant protection under tribal sovereign immunity. *Id.* at 66-67; *see*

23

*also Olson v. Ramsey County*, 509 N.W.2d 368, 371-72 (Minn. 1993) (determining that a county social worker's creation of a case plan "required the exercise of judgment" and involved "professional planning at the operational level in the discharge of an assigned governmental duty").[12] The affidavits make it clear that the social workers here are tribal officials and, thus, protected by sovereign immunity. *See E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302-05 (10th Cir. 2001) (applying tribal sovereign immunity to a social services employee and his supervisor).[13]

The state contends that Lower Sioux did not meet its burden to demonstrate that the social workers are tribal officials for purposes of sovereign immunity. But the affidavits filed by the social workers were uncontested at the district court. The state presented no argument and offered no counter evidence to demonstrate that the duties the tribal employees performed were ministerial tasks. Instead, the undisputed—and only—evidence before the district court demonstrated that the social workers' duties derived as a delegation of authority to them by a subdivision of the Tribe and required the exercise of

---

[12] We recognize that *Olson* involves the application of official immunity to a Ramsey County social worker, which is not the same as the sovereign immunity issue in these appeals. But the general analysis regarding the duties of a social worker is persuasive for our conclusion that the social workers' duties here were not merely ministerial.

[13] In *Shakopee Mdewakanton Sioux (Dakota) Gaming Enter. v. Prescott*, we reversed a district court's denial of a motion to quash subpoenas issued to commissioners for the Shakopee Mdewakanton Sioux Community Gaming Commission—a regulatory arm of the Shakopee Mdewakanton Sioux Community. Nos. A06-1880, A06-1934, 2007 WL 2769666, at *1-2 (Minn. App. Sept. 25, 2007). We held that the commissioners' testimony would relate only to the actions they performed within their official capacity. *Id.* Thus, the commissioners were entitled to immunity and the district court abused its discretion by not quashing the subpoenas. *Id.* Our holding today is consistent with *Prescott*, which we cite for its persuasive value. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

their judgment and professional planning. Put another way, the subpoenas compelled the social workers to testify about acts they performed solely within their official capacity.

These same witnesses would not, however, be entitled to tribal sovereign immunity if they were subpoenaed to testify as a witness regarding information obtained in their personal capacity. Counsel for Lower Sioux conceded during oral argument that sovereign immunity would not apply in a scenario where the state subpoenaed a tribal official to testify in a murder trial at which the tribal official would testify only about having witnessed the defendant pull the trigger. In that hypothetical situation, sovereign immunity would not apply because the tribal official's knowledge was obtained only in their personal capacity as an eyewitness to a murder and not in their capacity as a tribal official.

Beyond a mere hypothetical, a witness subpoenaed to testify in the adult criminal trial in these consolidated appeals[14] attested in his affidavit:

> Unlike the facts underlying this case, I gained my knowledge regarding the facts underlying Case No. 64-CR-22-79[15] through my personal capacity and not through my official capacity or official duties as a social worker in Family Services. Therefore, neither I nor the Lower Sioux Indian Community will be contesting the State's jurisdiction to enforce a subpoena properly served on me in that matter.

Thus, counsel's concession at argument was not based upon a mere hypothetical question posed by the panel. The witness, and the Tribe, have recognized that there are circumstances in which tribal sovereign immunity does not apply. The immunity would

---

[14] In the A24-0319 matter.

[15] 64-CR-22-79 involves a separate criminal matter that is not at issue in these appeals.

not extend to a properly served subpoena upon a tribal official seeking to compel testimony from the witness related to information that he gained only in his personal capacity. *See, e.g.*, *Long Visitor*, 523 F.2d 443 (concluding tribal members not entitled to tribal sovereign immunity from subpoenas compelling testimony relating to information the witnesses gained within their personal capacity—namely, allegedly witnessing the murders).

Unlike the above circumstances, the subpoenas issued in these cases sought testimony from the social workers regarding "knowledge of facts underlying the alleged crimes in this matter" that the witnesses obtained "exclusively from their employment with and job duties on behalf of the Community." That distinction makes all the difference. Because the subpoenas seek to compel the testimony of the social workers regarding information they obtained exclusively through their official roles, the "remedy sought is truly against the sovereign," and sovereign immunity applies. *See Lewis*, 581 U.S. at 162.

## DECISION

Because Public Law 280 does not abrogate tribal sovereign immunity, subpoenas are suits for the purposes of the sovereign-immunity analysis, and the social workers are entitled to sovereign immunity given the subpoenas seek to compel testimony about knowledge the employees gained exclusively within their roles as tribal officials, the district court abused its discretion by not quashing the subpoenas. We remand with instruction for the district court to enter an order quashing the subpoenas.

**Reversed and remanded.**