MURPHY, Circuit Judge.
I. INTRODUCTION
Tina Marie Somerlott appeals from the district court’s dismissal of her claims against CND, LLC (“CND”) for lack of subject-matter jurisdiction. See Fed. R.Civ.P. 12(b)(1). Somerlott brought federal employment discrimination claims against CND, alleging violations of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. After allowing discovery by both parties, the district court concluded CND was immune from suit under the doctrine of tribal sovereign immunity and, therefore, dismissed Somerlott’s complaint in its entirety. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court affirms.
II. BACKGROUND
Somerlott worked as a chiropractic technician at a clinic which was part of the Reynolds Army Community Hospital in Fort Sill, Oklahoma. At the time of her termination in January of 2007, her employer was CND, which provided staffing pursuant to a Department of Defense contract to provide chiropractic care at the Army Hospital. CND is a limited liability corporation organized under the laws of the state of Oklahoma, wholly owned by Cherokee Nation Businesses, Inc. (“CNB”). CNB is a tribal corporation wholly owned and regulated by the Cherokee Nation (the “Nation”). The Nation is a federally recognized Indian Tribe. Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs, 75 Fed.Reg. 60810, 60810 (Oct. 1, 2010). CND was originally formed as Cherokee Nation Distributors, Inc. (“CNDI”), a wholly owned subsidiary of Cherokee Nation Industries.[1] It was formed as an Oklahoma corporation. At the time of CNDI’s creation, the Nation did not have laws permitting the formation of limited liability companies.[2] On April 29, 2004, CNDI was converted to an Oklahoma limited liability company and *1147 renamed CND, LLC. CND became a wholly-owned subsidiary of CNB on February 1, 2008, pursuant to the Nation’s Jobs Growth Act of 2005.
Somerlott brought suit against CND on April 23, 2008, alleging employment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, and the Age Discrimination in Employment Act, 29 U.S.C. § 623. CND moved to dismiss, arguing it was protected from suit under the doctrine of tribal sovereign immunity and that it was not an “employer” under Title VII, see 42 U.S.C. § 2000e(b)(l) (excluding Indian tribes from definition of “employer”). The district court deferred ruling on the motion, granting limited discovery on the issue of whether CND is shielded by the Nation’s sovereign immunity. During the pendency of this discovery period, Somerlott amended her complaint and CND filed a new motion to dismiss arguing not only that it was protected by tribal sovereign immunity and the tribal exemption to Title VII, but also that it was exempt from the ADEA. See EEOC v. Cherokee Nation, 871 F.2d 937, 939 (10th Cir.1989). Somerlott filed her response to CND’s motion to dismiss on October 16, 2009.
Somerlott’s response to CND’s motion focused primarily on the statutory exemption issue. She argued: “The Indian Tribe’s relationship to CND is so attenuated that CND cannot be entitled to the Tribe’s exemption from the strictures of Title VII and the ADEA.” She attempted to distinguish EEOC v. Cherokee Nation by arguing CND’s activities were not intramural and did not implicate the Nation’s treaty-protected rights to self-governance. After discussing several cases concerning the applicability of the ADEA to tribes and tribal entities: Somerlott stated: “A review of the relevant case law where a tribe or arm of a tribe is given exemption has as a common element intramural disputes or matters affecting a tribe’s self-governance.” Because the activities giving rise to her claim — the operation of a chiropractic clinic serving non-Indian clients — are not normally considered governmental functions, Somerlott argued, neither the Title VII exemption nor the ADEA exemption should apply to CND.
In analyzing CND’s motion to dismiss, the district court undertook to determine whether CND constituted a “subordinate economic entity” of the Nation entitled to share in the Nation’s sovereign immunity. Noting that, “[ajlthough the subordinate economic entity analysis has been widely adopted, its implementation is rarely uniform,” the district court considered a variety of factors used by other courts to determine whether the relationship between a tribe’s economic entities and the tribe itself is sufficiently close for immunity to apply. The court concluded CND met “most, if not all” of the criteria used by courts to determine whether a tribal commercial enterprise is a subordinate economic entity of a tribe. The court also rejected Somerlott’s argument that CND’s activities were too attenuated from the Nation’s interest in self-governance. See Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. at 757-58, 118 S.Ct. 1700 (1998). Accordingly, the court granted CND’s motion to dismiss.
On appeal, Somerlott identifies three issues for review. First, she states: “The district court erred in extending tribal sovereign immunity to the defendant corporations, which have a tribal stakeholder, without regard to whether their activities were sufficiently connected with the self-governance of the tribe to warrant such immunity.” Second, she argues: “The court erred in finding that CND/CNDI are exempt from the ADEA, where Congressional enactment of the [Small Business *1148 Act] serves as evidence of legislative intent to include them.” Finally, she argues: “The court erred in entering judgment before CND/CNDI provided required responses to plaintiffs outstanding discovery.” Approximately ten days before Somerlott served her Opening Brief, this court decided Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort, 629 F.3d 1173, 1187 (10th Cir.2010) [hereinafter “BMG ”]. CND’s Response Brief relied almost exclusively on BMG for the proposition that it was a subordinate economic entity of the Nation entitled to share in its immunity. CND also (correctly) noted the district court made no finding as to whether it was entitled to the ADEA exemption, and responded to Somerlott’s argument concerning the district court’s handling of the jurisdictional discovery in the case.
This court ordered the parties to submit supplemental briefs addressing whether CND’s organization as a separate legal entity under Oklahoma’s Limited Liability Company Act precluded it from sharing in the Nation’s immunity. The parties were also ordered to discuss whether the argument that such organization precluded CND from sharing in the Nation’s immunity was properly before this court in light of the prior briefing to the district court and to this court.
III. DISCUSSION
A. Standard of Review
Ordinarily, determining whether CND shares the Nation’s sovereign immunity from suit involves a mixed question of law and fact. BMG, 629 F.3d at 1181-82. Therefore, the district court’s factual findings are reviewed for clear error and its legal conclusions are reviewed de novo. Id. at 1182. “A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Rio Grande Silver Minnow (Hybognathus amarus) v. Bureau of Reclamation, 599 F.3d 1165, 1175 (10th Cir.2010) (quotations omitted). However, when an argument was not raised before the district court but is instead advanced for the first time on appeal, the court will only reverse if the appellant shows the district court’s decision amounted to plain error. Richison v. Ernest Group, Inc., 634 F.3d 1123, 1128 (10th Cir.2011).
B. Sovereign Immunity
It is well-established that “Indian tribes are distinct, independent political communities, retaining their original natural rights in matters of local self-government. Although no longer possessed of the full attributes of sovereignty, they remain a separate people, with the power of regulating their internal and social relations.” Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (citations and quotations omitted). As sovereign powers, Indian tribes are immune from suit absent congressional abrogation or clear waiver by the tribe. Kiowa Tribe, 523 U.S. at 753, 118 S.Ct. 1700. “Tribal immunity extends to subdivisions of a tribe, and even bars suits arising from a tribe’s commercial activities.” Native Am. Distrib. v. Seneca-Cayuga Tobacco Co., 546 F.3d 1288, 1292 (10th Cir.2008) (citing Kiowa Tribe, 523 U.S. at 759, 118 S.Ct. 1700). The applicability of tribal sovereign immunity does not depend on whether the activities giving rise to the litigation occurred on or off tribal land. Kiowa Tribe, 523 U.S. at 754, 118 S.Ct. 1700. Nor does it depend on whether the tribe is directly responsible for the financial liabilities of its sub-entities. BMG, 629 F.3d at 1181.
In BMG, this court sought to determine whether a tribally owned casino and devel *1149 opment authority were protected from suit by the tribe’s sovereign immunity. 629 F.3d at 1176-77. Plaintiff BMG was a Colorado corporation providing online business management training and consulting services. 629 F.3d at 1177. Defendant Chukchansi Gold Casino and Resort was operated for the benefit of a federally recognized Indian tribe, the Picayune Ranchería of the Chukchansi Indians of California. Id. at 1177 n. 2. BMG alleged the Casino had unlawfully copied and used online training materials to train multiple employees when the Casino purchased only a single-user license. Id. at 1177. It brought suit against the Casino, the Chukchansi Economic Development Authority, which operated the casino, and the tribe itself, raising various federal and state law claims. Id. at 1177-78. The defendants moved to dismiss, arguing the court lacked subject matter jurisdiction under the doctrine of tribal sovereign immunity. Id. at 1178. The district court denied the motion, applying a test under which a tribe’s economic entities could not share in the tribe’s sovereign immunity without first showing that a judgment against the entities would result in direct financial liability for the tribe or otherwise imperil the tribe’s assets. Id. at 1179. This court reversed, holding the district court applied the wrong legal standard by treating “the financial impact on a tribe of a judgment against its economic entities as a threshold inquiry.” Id. at 1181. Instead, to determine whether a tribe’s economic entity is entitled to share in the tribe’s immunity, this court set forth a six-factor test for assessing the closeness of the relationship between the entity and the tribe. Id.
In concluding a subordinate economic entity analysis applied to this case, the district court overlooked a crucial distinction between CND and the entities at issue in previous cases in which the test has been applied: CND is incorporated under state law. By contrast, the entities to which a subordinate economic entity test has traditionally been applied, like the Casino and Authority in BMG, have all been organized, in some form or another, under tribal law. See id. at 1191; Allen v. Gold Country Casino, 464 F.3d 1044, 1046-47 (9th Cir.2006) (applying analysis to casino organized pursuant to tribal ordinance and interstate gaming compact); Johnson v. Harrah’s Kan. Casino Corp., No. 04-4142, 2006 WL 463138, at *2-8 (unpublished) (D.Kan. Feb. 23, 2006) (concluding tribal sovereign immunity does not extend to Nevada corporation conducting tribal business pursuant to contract with the tribe); see also Felix S. Cohen, Handbook of Federal' Indian Law § 7.05(l)(a) (2005 ed.) (“Although the immunity extends to entities that are arms of tribes, it apparently does not cover tribally chartered corporations that are completely independent of the tribe.” (emphasis added) (citation omitted)).[3]
Thus, the subordinate economic entity test is inapplicable to entities which are legally distinct from their members and which voluntarily subject themselves to the authority of another sovereign *1150 which allows them to be sued. See Okla. Stat. tit. 18, § 2004(B)(1) (“A limited liability company formed under this act is a separate legal entity....”); id. § 2003(1) (“Each limited liability company may ... [s]ue, be sued, complain and defend in all courts.... ”)• This approach is consistent with the traditional treatment of the sovereign immunity of the United States. While tribal sovereign immunity is not coextensive with that of the states, Kiowa Tribe, 523 U.S. at 756, 118 S.Ct. 1700, “[t]ribal sovereign immunity is deemed to be coextensive with the sovereign immunity of the United States.” Miner Elec., Inc. v. Muscogee (Creek) Nation, 505 F.3d 1007, 1011 (10th Cir.2007) (emphasis added). In that context, courts have held the United States’ sovereign immunity does not extend to its sub-entities incorporated as distinct legal entities under state law. For example, when the United States formed and became the sole shareholder of the Panama Railroad Company, a New York corporation, courts held the corporation was distinct from the United States and did not share its immunity. See Panama R. Co. v. Curran, 256 F. 768, 771-72 (5th Cir.1919) (citing Bank of the United States v. Planters' Bank of Ga., 22 U.S. 904, 907-908, 9 Wheat. 904, 6 L.Ed. 244 (1824)); Salas v. United States, 234 F. 842, 844-45 (2d Cir.1916) (“When the United States enters into commercial business it abandons its sovereign capacity and is to be treated like any other corporation.”). The court can identify no reason to depart from this principle here. Accordingly, CND, a separate legal entity organized under the laws of another sovereign, Oklahoma, cannot share in the Nation’s immunity from suit, and it is not necessary to apply the six-factor BMG test.
C. Preservation
While this court has no doubt the subordinate economic entity doctrine is inapplicable on the facts of this case, after reviewing the record the court concludes Somerlott did not properly preserve this basis for reversal before the district court. “An issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling.” Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1141 (10th Cir.2007). The majority of Somerlott’s arguments before the district court were not directed to the issue of sovereign immunity at all, but rather toward the separate issue of whether the statutory and non-statutory exemptions for Indian Tribes in Title VII and the ADEA applied to the Nation. To the extent Somerlott did discuss tribal sovereign immunity, she agreed the subordinate economic entity/arm of the tribe analysis was the appropriate rubric through which to analyze her claims. For example, she argued “[B]ecause CND does not meet the definition of an arm of the Tribe as required for immunity, its Motion to Dismiss should be denied.” Although it resolved the test against her, the district court interpreted Somerlott as conceding the applicability of the subordinate economic entity test, stating: “Upon application of the ‘arm of the tribe’ rationale advocated by Plaintiff,” CND meets most, if not all, of the criteria commonly used by courts in determining whether or not a tribal commercial enterprise is an “ ‘arm of the tribe.’ ”
In her response to the motion to dismiss, Somerlott admittedly emphasized CND’s status as a corporation and business entity, but she never argued this fact in itself precluded CND from sharing in the Nation’s immunity. More importantly, she did not argue CND’s status as a separate legal entity rendered the subordinate economic entity test inapplicable. She made no reference to Oklahoma’s Limited Liability Corporation Act or its provisions stating such entities may “sue and be sued.” Moreover, she advanced no argument concerning the coextensive nature of *1151 tribal sovereign immunity and that of the United States. Instead, she took the position CND’s activities were insufficiently connected with traditional government functions to share in the tribe’s immunity, a position the Supreme Court squarely rejected in Kiowa Tribe. 523 U.S. at 757-58, 118 S.Ct. 1700. Somerlott advanced substantially the same position in her initial briefing on appeal.[4] In response to this court’s order for supplemental briefing, however, she advocated the rule now adopted in this decision, which is at best only tangentially related to the sole position she presented to the district court. As a consequence, her arguments were not sufficiently preserved in the district court. See Ecclesiastes 9:10-11-12, 497 F.3d at 1142 (noting that a party’s challenge to the district court’s analysis of a rule does not preserve a challenge to the applicability of the rule itself.)
A panel of this court recently held that arguments raised for the first time in a civil appeal may be reviewed only for plain error. Richison, 634 F.3d at 1128. Plain error is (1) error, (2) which is plain, (3) which affects substantial rights, (4) and which seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. The burden of establishing plain error lies with the appellant. Id. at 1130. In civil cases, this burden is “extraordinary ... [and] nearly insurmountable.” Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 802 (10th Cir.2001). Somerlott has not carried that burden here. In her initial brief before this court, Somerlott did not even attempt to show how the district court’s use of the subordinate economic entity test was plain error. Further, even when given the express opportunity to present a comprehensive plain error argument in a supplemental brief, Somerlott has failed to do so. See Richison, 634 F.3d at 1131 (“the failure to argue for plain error and its application on appeal ... surely marks the end of the road for an argument for reversal not first presented to the district court.”) Instead, she simply emphasizes that the issue is purely legal and involves an important issue of public policy. While these considerations are legitimate, they are insufficient to warrant reversal under this court’s binding precedent. Richison, 634 F.3d at 1129.
Even assuming the district court’s erroneous application of the subordinate economic entity analysis was plain and affected Somerlott’s substantial rights, Somerlott wholly fails to argue the district court’s decision meets the fourth prong of the plain error test in her opening brief, her reply brief, or even her supplemental brief after having been specifically ordered to brief plain error. Instead, Somerlott summarily argues the case implicates a matter of great public importance and that failure to reverse would result in “manifest injustice.” She cites Rademacher v. Colorado Association of Soil Conservation Districts Medical Benefit Plan, 11 F.3d 1567, 1572 (10th Cir.1993) for the proposition that this court may exercise its discretion to consider matters not raised below in certain circumstances, such as “issues regarding jurisdiction and sovereign immunity, and instances where public interest is implicated, or where manifest injustice would result.” Id. at 1572-73 (citations omitted). Although Rademacher identifies sovereign immunity as an issue this court *1152 has been willing to consider for the first time on appeal, this court has always maintained a distinction between its obligation to consider arguments which might undermine its subject matter jurisdiction and arguments which might support it. See Daigle v. Shell Oil Co., 972 F.2d 1527, 1541 (10th Cir.1992) (“[Ojur responsibility to ensure even sua sponte that we have subject matter jurisdiction before considering a case differs from our discretion to eschew untimely raised legal theories which may support that jurisdiction.”).
Finally, although Somerlott repeatedly asserts “manifest injustice” would result if the court declined to reverse on her newly raised theory, she fails to identify any particular injustice beyond the loss of her possibly meritorious claim. This argument relates to the third prong of plain error review; something more is needed to satisfy the fourth prong. See United States v. Olano, 507 U.S. 725, 737, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (concluding a plain error affecting substantial rights does not in itself seriously affect the fairness, integrity, or public reputation of judicial proceedings).
D. Rule 59(e) Issue
Somerlott contends the district court erred in dismissing her claim “before CND/CNDI provided required responses to [her] outstanding discovery.” As a threshold matter, the court agrees with CND that the issue before the court for review is not the denial of discovery but rather the propriety of the district court’s order denying Somerlott’s Motion to Set Aside Order of Dismissal. The district court properly characterized this motion as a motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure. See Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir.1997) (“[A] motion will be considered under Rule 59(e) when it involves reconsideration of matters properly encompassed in a decision on the merits.” (quotations omitted)).
The court reviews the denial of Rule 59(e) relief for abuse of discretion. Comm. for the First Amendment v. Campbell, 962 F.2d 1517, 1523 (10th Cir.1992). “Under an abuse of discretion standard, a trial court’s decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.” Wright ex rel. Trust Co. of Kansas v. Abbott Labs., Inc., 259 F.3d 1226, 1235 (10th Cir.2001) (quotation omitted). The court “will not alter a tidal court’s decision unless it can be shown that the court’s decision was an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.” Id. at 1236 (quotation omitted).
Somerlott filed her complaint against CNDI on April 23, 2008. On June 16, 2008, CNDI moved to dismiss pursuant to Rule 12(b)(1) arguing the district court lacked subject matter jurisdiction under the doctrine of tribal sovereign immunity. When considering a motion to dismiss under Rule 12(b)(1) the court may consider evidence extraneous to the complaint itself without converting the motion to a Rule 56 motion for summary judgment. Wheeler v. Hurdman, 825 F.2d 257, 259 n. 5 (10th Cir.1987). The district court therefore permitted Somerlott to conduct limited discovery relating to the sovereign immunity issue in an order entered August 8, 2008.
Between then and April 17, 2009, the district court granted five requests for extensions of time for Somerlott’s response to the motion to dismiss. On May 26, 2009, three days after her Response to the Motion to Dismiss was due, Somerlott amended her complaint, adding CND as a defendant. Defendants filed a superseding motion to dismiss on June 23, 2009, *1153 which expanded their original arguments relating to tribal sovereign immunity and raised new arguments not at issue on appeal. On July 22, 2009, Somerlott requested another extension of time to file her response and informed the court she anticipated requesting additional discovery. The court granted this motion on July 24, 2009, making Somerlott’s response to the motion to dismiss due on September 30, 2009.
On September 17, Somerlott filed yet another motion for an extension of time as well as motions to compel discovery responses. The district court struck the motions to compel because Somerlott failed to comply with the court’s local rules. It also denied the motion for an extension of time, concluding Somerlott had “received ample opportunity to conduct any discovery she deemed necessary, and she has not acted diligently to pursue any outstanding discovery materials that she desired.” On September 22, Somerlott filed two amended motions to compel, as well as another motion for an extension of time. The district court summarily denied the motion for a further extension of time. Undeterred, on September 24 Somerlott filed a motion for reconsideration of her original motion to continue. Although the district court “[found] that Plaintiff has not presented any new fact or other proper basis for reconsideration of the prior orders denying Plaintiff a third extension of time ... to complete discovery and respond to Defendants’ Motion to Dismiss,” it nonetheless “grant[ed] Plaintiffs alternative request for a brief enlargement of time to prepare and file her response.”
By January 7, 2010, CND’s motion to dismiss was fully briefed, including supplemental declarations and notices of authority filed by both parties. The motions to compel were set for a February 4, 2010, hearing. At the hearing, the parties informed the court they had resolved almost all discovery issues by agreement with the exception of one Interrogatory and a related Request for Production concerning CND’s financial records.
The parties now dispute their respective obligations under this agreement. While they agree CND’s obligation to provide additional discovery was conditioned on the court’s entry of a protective order, Somerlott argues she was under no obligation to cooperate with CND in submitting a joint motion for such an order. The parties initially did cooperate and submitted a joint motion for an agreed-upon protective order on February 12, 2010. The district court, however, denied the motion without prejudice because of several deficiencies, most generally because the proposed order was overbroad in scope. No revised order was submitted. Pursuant to the parties’ agreement announced at the February 4 hearing, on February 23, 2010, the district court denied as moot substantially all of the motion to compel. Nearly seven weeks later, on April 16, 2010, the district court granted CND’s motion to dismiss.
Grounds for granting a Rule 59(e) motion include “(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.” Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir.2000). Where a party seeks Rule 59(e) relief to submit additional evidence, “the movant must show either that the evidence is newly discovered [or] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence.” Comm. for First Amendment, 962 F.2d at 1523. The district court concluded Somerlott failed to act diligently in pursuing her outstanding discovery requests and *1154 therefore concluded she failed to make the necessary showing for Rule 59(e) relief.
This determination did not “exceed the bounds of permissible choice” under the circumstances. See Wright, 259 F.3d at 1235. As of February 26, 2010, CND’s counsel informed Somerlott’s counsel it would not be providing any additional discovery without a protective order, that it considered Somerlott’s counsel to be in breach of the parties’ agreement, and that additional discovery issues needed to be “set ... before the court for resolution.” Somerlott was at that point on notice the defendants did not intend to disclose any additional material absent a court order. Nonetheless, she took no action for over seven weeks. The district court’s conclusion that this delay, considered in context of Somerlott’s numerous prior requests for extensions of time, amounted to a lack of diligence, was not “arbitrary, capricious, whimsical, or manifestly unreasonable,” and therefore will not be disturbed on appeal. See id. at 1236.
IV. CONCLUSION
For the foregoing reasons, the court AFFIRMS the decision of the district court.

. Somerlott initially named CNDI in her complaint, but later amended her complaint to include CND. The distinction between these entities is not material to the court's resolution of this appeal.

. The Cherokee Nation Limited Liability Company Act, Legislative Act 32-04, was passed in 2004, and the Cherokee Nation General Corporation Act, Legislative Act 96-16, was passed in 1996.

. Recently, the United States District Court for South Dakota applied the BMG test to a tribal entity incorporated under state law, concluding the entity's organization as a state corporation was merely one consideration among others when weighing the BMG factors. See J.L. Ward Assocs. v. Great Plains Tribal Chairmen's Health Bd., 842 F.Supp.2d 1163, 1175-76 (D.S.D.2012). This court con-eludes J.L. Ward is unpersuasive insofar as it would result in tribal sovereign immunity being broader than the sovereign immunity of the United States. See Miner Elec., Inc. v. Muscogee (Creek) Nation, 505 F.3d 1007, 1011 (10th Cir.2007) (“Tribal sovereign immunity is deemed to be coextensive with the sovereign immunity of the United States.”).

. In addition to her central argument that CND’s activities were insufficiently connected to tribal government functions, Somerlott also argued CND could not share in the Nation's immunity because it was not organized pursuant to the Oklahoma Indian Welfare Act. This position, too, was forfeited before the district court, because Somerlott made no mention of OIWA whatsoever.