FILED
**United States Court of Appeals**
**Tenth Circuit**

**November 13, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GUY CLARK; LINDA CORWIN;
CRAIG CORWIN; RICHARD JONES;
WESLEY HANCHETT; MICHAEL
WRIGHT,

      Plaintiffs - Appellants,

v.

DEB HAALAND, in her official capacity
as Secretary of Interior; CAMILLE C.
TOUTON, in her official capacity as
Deputy Commissioner, United States
Bureau of Reclamation; MARTHA
WILLIAMS, in her official capacity as
Principal Deputy Director, U.S. Fish &
Wildlife Service; RUDY SHEBALA, in
his official capacity as Executive
Director, Navajo Nation Division of
Natural Resources; DAVID ZELLER, in
his official capacity as head of Navajo
Nation Indian Agricultural Product
Industries; MIKE HAMMAN, in his
official capacity as State Engineer of the
State of New Mexico; ROLF SCHMIDT-
PETERSEN, in his official capacity as
Director of New Mexico Interstate
Stream Commission,

      Defendants - Appellees.
_____

No. 22-2141
(D.C. No. 1:21-CV-01091-KG-SCY)
(D. N.M.)

**ORDER AND JUDGMENT**[*]
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent,

_____

Before **TYMKOVICH**, **EID**, and **CARSON**, Circuit Judges.

_____

Motions to Dismiss strip cases of non-justiciable claims until only those based in facts upon which the court may grant relief remain. To survive a Motion to Dismiss, plaintiffs must write a complaint that contains more than legal conclusions and allege facts that entitle them to relief. When they appeal a dismissal, plaintiffs must similarly include more than bare citations to case law in analyzing why the district court erred.

Plaintiffs Guy Clark, Linda Corwin, Craig Corwin, Richard Jones, Wesley Hanchett, and Michael Wright sued federal, state, and tribal officials in their official capacities in federal district court. The court granted defendants' separate motions to dismiss based on sovereign immunity and dismissed this action without prejudice for lack of jurisdiction. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

A.

Plaintiffs sought declaratory relief against seven defendants, all in their official capacities: 1) Deb Haaland, United States Secretary of the Interior; Camille C. Touton, Deputy Commissioner, United States Bureau of Reclamation; and Martha Williams, Principal Deputy Director, United States Fish & Wildlife Service (collectively,

_____

except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Federal Defendants); 2) Dr. Rudy Shebala, Executive Director, Navajo Nation Division of Natural Resources; and David Zeller, head of the Navajo Indian Agricultural Products Industries (collectively, Navajo Defendants); and 3) Michael Hammond, New Mexico State Engineer; and Rolf Schmidt-Peterson, Director of the New Mexico Interstate Stream Commission (collectively, State Defendants).  Plaintiffs alleged they are water users residing in Sandoval, San Juan, and Bernalillo Counties in New Mexico, and that the Defendants currently violate federal water law in a manner that deprives them of their water rights.

Plaintiffs spent much of their complaint describing the history and purpose of the various statutes and court decisions they argued Defendants violated rather than explaining how Defendants did so.  They discussed, for example, the concepts of "beneficial use" according to the Reclamation Act of 1902, Aplts. App., Vol. 1 at 19–21; "practicably irrigable acreage" or "PIA," id. at 21-24; and "minimum needs," id. at 24–25.  Plaintiffs alleged facts related to the Colorado River Basin and the Compacts that allocate the waters of that Basin, the rivers that make up that Basin (including the San Juan River in northern New Mexico), and Bureau of Reclamation (BOR) projects in various western states authorized under various federal statutes. Plaintiffs also noted that various federal statutes either governed or applied to water use in this area, listing, among others, the Endangered Species Act, the Clean Water Act, the Safe Drinking Water Act, and the National Environmental Policy Act.

In the section of the complaint entitled "Why a Federal Declaratory Judgment Action is Necessary," id. at 32 (emphasis omitted), however, they did not use the

3

same specificity.  Rather than describe actions Defendants either took or failed to take, they alleged broad conclusions and accusations such as that "[t]he defendants have not complied with or enforced these laws," that "[t]he defendants are under strong political pressures not to enforce these laws" because "it would be impolitic and stressful for defendants," and that "[t]his lawsuit is made necessary by the defendants' long and continuing record of noncompliance with the law."  Id. at 32–33.  Similarly, while Plaintiffs also asserted that "[t]he water rights of other tribes and pueblos[1] are being jeopardized by the ongoing failure to enforce the laws," they neglected to mention how.  Id. at 33.

Plaintiffs' complaint then shifted focus to allegations regarding litigation in state court in New Mexico.  They alleged that the State of New Mexico initiated the San Juan Basin general stream litigation in 1975 to adjudicate the water rights of the United States on behalf of three Indian tribes, including the Navajo Nation.  The state initiated the Navajo Inter Se case in 2009 to similarly adjudicate the water rights of the Navajo Nation relative to other water owners.  The latter case culminated in the New Mexico Court of Appeals' decision in State ex rel. State Engineer v. United States, 425 P.3d 723 (N.M. Ct. App. 2018).  Plaintiffs alleged that decision made "plain errors of federal law," resulting in "[a]n irreconcilable conflict between state and federal law," Aplts. App., Vol. 1 at 33–34.  The alleged errors of law include "that [the Navajo Indian Irrigation Project] NIIP is not a BOR project; that

_____

[1] The Complaint is not clear as to the meaning of "other tribes and pueblos."

NIIP is not subject to the beneficial use requirement, or the PIA standard; that Congress created water rights by authorizing the construction of NIIP; that the state's water laws and regulations are pre-empted by federal law; and that a state court can adjudicate water rights in interstate rivers without considering global warming, lack of available water, endangered species, or other federal reserved water rights." Id. at 33 (citations omitted).  Plaintiffs asserted that "[t]hese legally incorrect rulings adversely affect water users in the San Juan Basin" and "injure water users on the Rio Grande." Id. at 34.[2]  But Plaintiffs did not point to any actions Defendants took based upon State ex rel. State Engineer that violate federal law as they allege.

Plaintiffs then asserted that the San Juan general stream litigation and the Navajo Inter Se case subjected them to ongoing deprivations of their federal due-process rights (1) to be heard at a meaningful time and in a meaningful manner, (2) to adequate service of process, (3) to file an answer and counterclaim, (4) to impartial judges, and (5) to the protection of their property.[3]  Also in connection with the New Mexico state-court litigation, Plaintiffs asserted "an ongoing infringement of [their] First Amendment right to speak in court, to speak through their lawyers, and to speak to the press," Aplts. App., Vol. 1 at 52, a denial of equal protection vis-à-vis

---

[2] Part V of the Complaint alleges a chronology of events in the San Juan Basin general stream litigation.

[3] In Parts V and VI of the Complaint, Plaintiffs include numerous, specific allegations regarding state-court judges who are not parties to this litigation, as well as other alleged improprieties in connection with the San Juan general stream litigation.

the Navajo Nation in the Navajo Inter Se case, and a denial of substantive due process. Continuing the theme common to the complaint, Plaintiffs alleged few facts about how Defendants violated these alleged rights to support these bare legal conclusions.

For relief, Plaintiffs sought "declaratory judgments on the points of federal law set forth in Parts III and IV" of the Complaint. Id. at 56. They asked the district court to declare: 1) Navajo Dam, Navajo Reservoir, NIIP, the San Juan-Chama Project, and the Animas-La Plata Project are BOR projects subject to the beneficial use requirement set forth in section 8 of the Reclamation Act and Jicarilla Apache Tribe v. United States[4]; 2) The PIA standard applies to NIIP and all other irrigation projects; 3) PIA is the measure of Winters[5] rights for the Navajo Nation; 4) The minimum needs doctrine applies to federal reserved rights claimed for the Navajo Nation; 5) The Colorado River Storage Act and the NIIP Act do not create water rights. They simply authorize the construction of waterworks like dams, irrigation projects, canals, and reservoirs; 6) Federal law does not follow the homeland theory espoused in In re General Adjudication of All Rights to Use Water in Gila River System & Source (Gila V), 35 P.3d 68 (Ariz. 2001); and 7) State and federal courts cannot ignore federal environmental laws when they adjudicate rivers.

---

[4] Jicarilla Apache Tribe v. United States, 657 F.2d 1126 (10th Cir. 1981).

[5] Winters v. United States, 207 U.S. 564 (1908).

Aplts. App., Vol. 1 at 35–36.  Plaintiffs also sought declaratory judgments on "the issues of federal law in Part VI" of the Complaint regarding their due process, equal protection, and First Amendment claims, id. at 56, as well as unspecified injunctive relief to implement and enforce the declaratory judgments.

## B.

The Federal, State, and Navajo Defendants moved to dismiss the complaint for lack of jurisdiction, arguing that sovereign immunity protected them from suit. Plaintiffs opposed the motions.  The district court granted all three and dismissed the Complaint without prejudice.  Finding that the case "constitute[d] a collateral attack on a state court order [that] ask[ed] th[e] Court to functionally overrule the state court order outside the normal appeals process," Aplts. App., Vol. 2 at 191, the district court held that Eleventh Amendment immunity bars the court from exercising federal jurisdiction over the State Defendants, rejecting Plaintiffs' contention that the doctrine in Ex parte Young, 209 U.S. 123 (1908), applies in this case.  It dismissed the claims against the Navajo Defendants, concluding that Congress has not waived tribal sovereign immunity and the Ex parte Young doctrine does not apply.  And it held that none of the statutes Plaintiffs cited waives the Federal Defendants' sovereign immunity in this case.  Plaintiffs appeal.

## II.

We review de novo the district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction based on sovereign immunity.  See Hennessey v. Univ. of Kan. Hosp. Auth., 53 F.4th 516, 527

7

(10th Cir. 2022). "The party seeking the exercise of jurisdiction in his favor must allege in his pleading the facts essential to show jurisdiction." Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991) (internal quotation marks omitted). Importantly, conclusory allegations cannot establish jurisdiction. See id.; see also Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971) ("Whether the federal district court had jurisdiction of the action must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."); Celli v. Shoell, 40 F.3d 324, 327 (10th Cir. 1994) ("Mere conclusory allegations of jurisdiction are not enough.").

## III.

Plaintiffs contend the district court erred in granting all three motions to dismiss.[6] They employ both new and previously made arguments to do so. By their own admission, their opening brief "consists mostly of extensive quotations from the decisions of this court and the Supreme Court," declaring that "the best approach is to let the cases speak for themselves, without adding the gloss of argument." Aplts. Opening Br. at 14. As was true with their complaint, Plaintiffs should have included a bit more analysis and far fewer bare case law citations.

---

[6] The Federal, State, and Navajo Defendants' separate motions each invoked the specific form of sovereign immunity applicable to the moving defendants. In Plaintiffs' combined response to these motions in the district court, and again in their opening appeal brief, Plaintiffs sometimes failed to indicate the defendants to which their arguments pertain. We construe each argument based on its legal applicability to defendants' claims of sovereign immunity.

A.    Sue-and-be-Sued Clauses

Plaintiffs contend that all three governments waived sovereign immunity in this case by suing water owners on the San Juan River in the Navajo Inter Se case. They cite decisions applying sue-and-be-sued clauses enacted by Congress that waive sovereign immunity.  See, e.g., FDIC v. Meyer, 510 U.S. 471, 480–81 (1994).

Plaintiffs failed to preserve this argument in the district court.  "An issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling." Somerlott v. Cherokee Nation Distribs., Inc., 686 F.3d 1144, 1150 (10th Cir. 2012) (internal quotation marks omitted).  Here, Plaintiffs did not invoke any sue-or-be-sued clause in their response to the defendants' motions to dismiss.  This preservation requirement applies equally to arguments in favor of jurisdiction:

> Although sovereign immunity and thus subject matter jurisdiction are at issue in this case, our responsibility to ensure even sua sponte that we have subject matter jurisdiction before considering a case differs from our discretion to eschew untimely raised legal theories which may support that jurisdiction.  We have no duty under the general waiver rule to consider the latter.

Iowa Tribe of Kan. & Neb. v. Salazar, 607 F.3d 1225, 1231 (10th Cir. 2010) (internal quotation marks omitted).

"If a newly raised legal theory is entitled to appellate review at all—if it wasn't waived before the district court—it may form a basis for *reversal* only if the appellant can satisfy the elements of the plain error standard of review." Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1130 (10th Cir. 2011) (emphasis in original).

9

Plaintiffs do not argue for plain-error review of this issue. For that reason alone, we do not reach their argument.

     B.     State Defendants—Eleventh Amendment Immunity

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." Williams v. Utah Dep't of Corr., 928 F.3d 1209, 1212 (10th Cir. 2019). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Id. (internal quotation marks omitted).

State officials in their official capacities act on behalf of the state and are therefore also immune under the Eleventh Amendment. Elephant Butte Irr. Dist. of N.M. v. Dep't of Interior, 160 F.3d 602, 607 (10th Cir. 1998). Under Ex parte Young, however, "the Eleventh Amendment generally does not bar a suit against a state official in federal court which seeks only prospective equitable relief for violations of federal law, even if the state is immune." Id. at 607–08. This exception applies because "if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct." Id. at 608 (internal quotation marks omitted). But Ex parte Young does not permit a suit against a state official for "retroactive or compensatory relief." Id.[7]

---

[7] Plaintiffs contend that in Gill v. Public Employees Retirement Board, 90 P.3d 491 (N.M. 2004), "the New Mexico Supreme Court abolished the sovereign immunity of the State of New Mexico for claims for injunctive relief under Ex parte Young," Aplts. Opening Br. at 28. We do not address this contention because Plaintiffs did not raise it in the district court and do not argue for plain-error review on appeal. See Richison, 634 F.3d at 1130–31.

"[F]or the Ex parte Young exception to apply, plaintiffs must show that they are: (1) suing state officials rather than the state itself, (2) alleging an ongoing violation of federal law, and (3) seeking prospective relief." Muscogee (Creek) Nation v. Pruitt, 669 F.3d 1159, 1167 (10th Cir. 2012). Thus, a court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief characterized as prospective." Id. (internal quotation marks omitted).

The district court held that Plaintiffs' generic collective allegations that "the defendant public officials" are violating a myriad of federal water laws "lack[] the specificity required to fall within the Ex parte Young exception to Eleventh Amendment [i]mmunity." Aplts. App., Vol. 2 at 194 (internal quotation marks omitted). The district court also considered the Complaint's limited allegations specifically against the State Defendants, and concluded that Plaintiffs failed to allege (1) any past or likely future violation of federal law by the Director of the New Mexico Interstate Stream Commission or (2) any ongoing violation of federal law by the New Mexico State Engineer.

In their opening brief, Plaintiffs do not challenge the district court's holding that their conclusory collective allegations against all Defendants are insufficient to establish jurisdiction. See Penteco Corp., 929 F.2d at 1521; Groundhog, 442 F.2d at 677; Celli, 40 F.3d at 327. They therefore forfeited review of that ruling. See Kitchen v. Herbert, 755 F.3d 1193, 1208 (10th Cir. 2014) ("The omission of an issue in an opening brief generally forfeits appellate consideration of that issue.") (brackets

11

and internal quotation marks omitted).  To the extent their appeal contentions continue to rely on these conclusory collective allegations, Plaintiffs fail to show error in the district court's holdings.

With regard to the application of Ex parte Young, Plaintiffs assert that the district court "failed to follow" Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140 (10th Cir. 2011).  Aplts. Opening Br. at 17.  They quote extensively from that decision but do not explain *how* the district court varied from it in dismissing their claims.  We will not craft an argument for them.  See Perry v. Woodward, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999).[8]

Plaintiffs contend that the district court erred in concluding that "sovereign immunity is not waived where the complaint seeks to remedy past wrongs."  Aplts. Opening Br. at 17 (internal quotation marks omitted).  They are correct that the fact that a plaintiff seeks to "right a previous wrong" does not necessarily preclude the application of Ex parte Young.  See Opala v. Watt, 454 F.3d 1154, 1158 (10th Cir. 2006).  Plaintiffs claim a few of our cases support the application of Ex Parte Young in this case.  They rely on Buchwald v. University of New Mexico School of

---

[8] Quoting or citing caselaw without applying it to the circumstances of the instant case and explaining how it demonstrates error in the district court's ruling does not suffice.  See Dodds v. Richardson, 614 F.3d 1185, 1205 (10th Cir. 2010) ("A court of appeals is not required to manufacture an appellant's argument on appeal when it has failed in its burden to draw our attention to the error below.  In the event of such a failure, the court will ordinarily consider the appellant's point waived.") (internal quotation marks omitted); Kellogg v. Watts Guerra LLP, 41 F.4th 1246, 1268 (10th Cir. 2022) ("Perfunctory allegations of error fail to frame and develop an issue sufficient to invoke appellate review.") (brackets and internal quotation marks omitted).

Medicine, 159 F.3d 487, 496 (10th Cir. 1998), where we held that Ex parte Young applied when a plaintiff alleged that her continued exclusion from a state university caused an ongoing constitutional violation, and she sought an injunction ordering her placement in the school.　Plaintiffs also point to Meiners v. University of Kansas, 359 F.3d 1222, 1232 (10th Cir. 2004), where we held that a plaintiff's due-process claim seeking reinstatement as a tenured faculty member at a state university was not barred by the Eleventh Amendment (although her claims for backpay, damages, and retrospective declaratory relief were barred).

　　　Plaintiffs contend the Complaint "comes squarely within the Ex parte Young doctrine as enunciated in" these cases because it "alleges that the public officials have violated federal water laws for many years in the past, and will continue to do so in the future, unless the court grants prospective relief."　Aplts. Opening Br. at 19. But this assertion ignores the district court's ruling that Plaintiffs' conclusory collective allegations against all defendants do not satisfy the requirement to plead an ongoing violation of federal law.　And Plaintiffs also fail to challenge the district court's analysis of their nonconclusory allegations regarding the State Defendants. The district court found those allegations do not show that the Director of the New Mexico Interstate Stream Commission "has violated or is likely to continue violating federal law in any respect," Aplts. App., Vol. 2 at 194, and that the allegations against the State Engineer "address only past conduct," id. at 195. Plaintiffs fail to demonstrate otherwise.　They do not point to any nonconclusory allegation of an ongoing violation of federal law against either State Defendant,

13

neither of whom the opening brief mentions.[9]  Consequently, we affirm the district

court's dismissal without prejudice of Plaintiffs' claims against the State Defendants

for lack of jurisdiction.[10]

      C.      Navajo Defendants—Tribal Sovereign Immunity

"Indian tribes are domestic dependent nations that exercise inherent sovereign

authority over their members and territories."  Fletcher v. United States, 116 F.3d

1315, 1324 (10th Cir. 1997) (internal quotation marks omitted).  "[S]uits against

tribes are barred in the absence of an unequivocally expressed waiver by the tribe or

abrogation by Congress."  Id.  "Tribal sovereign immunity is immunity from suit in

federal court."  Id. at 1326.  And a tribe's immunity extends to tribal officials sued in

their official capacities.  Id. at 1324.  Tribal sovereign immunity raises a

---

[9] To the extent Plaintiffs cite any nonconclusory allegations against the State Defendants in their reply brief, their contentions come too late.  See Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000) (holding "[t]his court does not ordinarily review issues raised for the first time in a reply brief").  We do not read Plaintiffs' reply contentions as responding to new arguments raised by defendants' briefs, see, e.g., Sadeghi v. INS, 40 F.3d 1139, 1143 (10th Cir. 1994), when they entirely fail to address the district court's analysis of their nonconclusory allegations in their opening brief.

[10] Plaintiffs cursorily reference the Civil Rights Act in their opening brief, Aplts. Opening Br. at 29, but they do not develop an argument why that Act would give the district court jurisdiction over their claims against the State Defendants because they fail to establish the applicability of the Ex parte Young exception to Eleventh Amendment immunity, see id. at 29–30 (discussing that exception).

jurisdictional issue.  Bonnet v. Harvest (U.S.) Holdings, Inc., 741 F.3d 1155, 1158–59 (10th Cir. 2014).

### 1.    Scope of Tribal Sovereign Immunity

Plaintiffs first argue that the district court misread Fletcher as applying tribal sovereign immunity to virtually all cases involving Indian tribes.  They contend that tribal sovereign immunity does not protect the Navajo Defendants in this case because, unlike in Fletcher, this dispute does not involve only tribal members.  Plaintiffs cite no authority for this proposition, and we do not address it.  See United States v. Banks, 451 F.3d 721, 728 (10th Cir. 2006).  We note, however, that in Fletcher, 116 F.3d at 1324, we cited the Supreme Court's decision in Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58–59 (1978), which held that sovereign immunity exempts an Indian tribe from suit absent an unequivocal waiver of sovereign immunity by the tribe or abrogation by Congress.  No such waiver exists here.

### 2.    McCarran Amendment

Plaintiffs contend that Congress waived tribal sovereign immunity in the McCarran Amendment, which provides consent "to join *the United States* as a defendant" in certain lawsuits, 43 U.S.C. § 666(a) (emphasis added).  Congress intended the McCarran Amendment "to permit the joinder of the United States as a party defendant in any suit for the adjudication of rights to the use of water," Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800, 808 (1976), including suits in state court to adjudicate federal reserved water rights held on behalf of

15

Indians, see id. at 809–10.  Plaintiffs argue the McCarran Amendment therefore permits them to sue the Navajo Defendants in this case.

But the statute only unequivocally provides consent to sue the United States. And in this context, the Supreme Court has clearly distinguished between "sovereign immunity with regard to . . . Indian *rights*," which the McCarran Amendment waives, and "sovereign immunity of Indians as *parties*," which "the McCarran Amendment did not waive."  Arizona v. San Carlos Apache Tribe of Ariz., 463 U.S. 545, 566 n.17 (1983) (emphasis in original).[11]  Plaintiffs fail to show that the district court erred in holding that the McCarran Amendment does not provide consent to sue the Navajo Defendants in this case.

### 3.    Ex parte Young

Ex parte Young is an additional exception to tribal sovereign immunity. Crowe & Dunleavy, 640 F.3d at 1154.  But Plaintiffs' claims against the Navajo Defendants do not fall within the Ex parte Young exception for the same reasons that their claims against the State Defendants do not fall within that exception to Eleventh

---

[11] Plaintiffs insist that the district court and the Navajo Defendants misread San Carlos Apache Tribe on this point.  They assert that the district court's holding relies entirely on an argument made by the parties in that case, see 463 U.S. at 566 (recounting argument that "[t]he McCarran Amendment, although it waived United States sovereign immunity in state comprehensive water adjudications, did not waive *Indian* sovereign immunity"), and that the Supreme Court ultimately rejected that argument.  But it is Plaintiffs who misread the Court's decision.  The Supreme Court—not the parties—stated that "the McCarran Amendment did not waive the sovereign immunity of Indians as *parties*."  Id. at n.17.  And in its subsequent discussion, the Court did not hold to the contrary.  See id. at 567–71 (discussing only the applicability of the McCarran Amendment to Indian water rights).

16

Amendment immunity. As previously noted, Plaintiffs do not challenge the district court's holding that their conclusory collective allegations against all defendants are insufficient to establish jurisdiction under Ex parte Young. Nor do Plaintiffs point to any nonconclusory allegations of ongoing violations of federal law by the Executive Director of the Navajo Nation Division of Natural Resources or the head of Navajo Nation Indian Agricultural Product Industries. They therefore fail to show the district court erred in holding that their claims against the Navajo Defendants do not come within the Ex parte Young exception to tribal sovereign immunity.

We affirm the district court's dismissal without prejudice of Plaintiffs' claims against the Navajo Defendants for lack of jurisdiction.

D.    Federal Defendants—Federal Sovereign Immunity

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." Meyer, 510 U.S. at 475. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." Id. (internal quotation marks omitted). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996) (citations omitted). Thus, "jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver." Speidell v. United States, 978 F.3d 731, 745–46 (10th Cir. 2020) (brackets

17

and internal quotation marks omitted).  Additionally, "[a] suit against a [federal] government agent in his official capacity is treated as a suit against the government." Mocek v. City of Albuquerque, 813 F.3d 912, 932 (10th Cir. 2015).

>        1.        Argument that an Express Waiver is Unnecessary

Citing Armstrong v. Exceptional Child Center, Inc., 575 U.S. 320 (2015) and Marbury v. Madison, 5 U.S. 137 (1803), Plaintiffs contend they do not need an express statutory waiver of sovereign immunity to sue the Federal Defendants for declaratory and injunctive relief.  But Plaintiffs did not cite these cases for that proposition in opposing the Federal Defendants' motion to dismiss at the district court.  See Aplts. App., Vol. 2 at 103 (citing *Marbury* for a different proposition). Similarly, although Plaintiffs argued in response to the motions to dismiss that "the defendant public officials are violating and failing to enforce numerous federal laws [and cases] relating to water," including Jicarilla Apache Tribe, Aplts. App., Vol. 2 at 92, they did not contend that decision gives the district court jurisdiction over the Federal Defendants.

Plaintiffs based their most complete argument on our decision in Elephant Butte, 160 F.3d at 602.  They argued it "provides a useful illustration that . . . federal officials can be sued in federal court to ensure compliance with federal laws." Aplts. App., Vol. 2 at 93.  Explaining why Elephant Butte indicates the Federal Defendants have no sovereign immunity, however, Plaintiffs stated only that federal officials were among the named defendants in Elephant Butte and that "no one disputed that plaintiffs could sue the Interior Secretary and the head of the BOR."

18

Aplts. App., Vol. 2 at 93.  Their inference seems to be that the federal officials in

Elephant Butte did not have sovereign immunity merely because that case did not

discuss it.  This inference leaps too far.  Elephant Butte only addressed Ex parte

Young's application to state officials' Eleventh Amendment immunity.  See 160 F.3d

at 605.  We decline to upend sovereign immunity doctrine merely because Elephant

Butte did not discuss the federal officials' sovereign immunity.

None of Plaintiffs' current contentions based upon these cited decisions was

sufficiently raised in the district court to preserve the issues for appeal.  See

Somerlott, 686 F.3d at 1150.  And because Plaintiffs do not argue for plain-error

review of these issues, we do not consider them.  See Richison, 634 F.3d

at 1130–31.[12]

   2. McCarran Amendment

The district court held that the McCarran Amendment, 43 U.S.C. § 666, does

not provide a waiver of federal sovereign immunity in this case.  Section 666(a)

provides:

> Consent is given to join the United States as a defendant in any suit (1) for
> the adjudication of rights to the use of water of a river system or other
> source, or (2) for the administration of such rights, where it appears that the
> United States is the owner of or is in the process of acquiring water rights

---

[12] Plaintiffs state in their opening brief that "[t]he district court committed a plain reversible error of law by concluding that the Secretary of the Interior and other federal officials enjoy sovereign immunity against lawsuits for the enforcement of federal laws."  Aplts. Opening Br. at 19.  We do not construe this statement as an assertion that plain-error review applies to Plaintiffs' contention that an express waiver of federal sovereign immunity is unnecessary.  They do not acknowledge their failure to raise these case law arguments in the district court, nor do they cite the plain-error review standard or attempt to satisfy it.

> by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit.

The McCarran Amendment's sovereign immunity waiver applies only to comprehensive actions to decide all rights to a water source. Dugan v. Rank, 372 U.S. 609, 618 (1963) (holding the McCarran Amendment did not permit joining the United States in a case not "involving a general adjudication of all of the rights of various owners on a given stream") (internal quotation marks omitted). The district court concluded that "Plaintiffs cannot explain how the instant lawsuit is either a water rights adjudication (it is not) or a suit involving the administration of water rights within the meaning of the McCarran Amendment." Aplts. App., Vol. 2 at 196. Ignoring these conclusions, Plaintiffs still do not explain how the McCarran Amendment provides consent to sue the United States *in this case*. See Aplts. Opening Br. at 31 (arguing that "Congress enacted the McCarran Amendment to eliminate sovereign immunity in water adjudications"). They therefore fail to show error in the district court's holding that the McCarran Amendment does not waive the Federal Defendants' sovereign immunity in this case.

### 3. Administrative Procedure Act

Plaintiffs contend that the waiver of sovereign immunity in the Administrative Procedure Act (APA) applies to their claims against the Federal Defendants. The APA provides, in relevant part:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or officer or employee thereof acted or failed to act in an official capacity or under color of legal authority

20

shall not be dismissed nor relief therein be denied on the ground that it is
against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.  This sovereign immunity waiver applies to both APA and non-APA

suits.  Simmat v. U.S. Bur. of Prisons, 413 F.3d 1225, 1233 (10th Cir. 2005),

abrogated on other grounds by Jones v. Bock, 549 U.S. 199, 216 (2007).  The district

court held that Plaintiffs' Complaint failed to connect the waiver in § 702 to the

alleged conduct of the Federal Defendants.  See Aplts. App., Vol. 2 at 196.

In their opening brief, Plaintiffs quote extensively from another court's

application of § 702 to the claims in a different complaint.  See Aplts. Opening Br. at

25–26 (quoting Z Street, Inc. v. Koskinen, 44 F. Supp. 3d 48 (D.D.C. 2014)).  But

Plaintiffs again fail to apply the terms of the § 702 waiver to the allegations in their

Complaint.  They do not show how the Complaint "stat[es] a claim that an agency or

an officer or employee thereof acted or failed to act in an official capacity or under

color of legal authority."  5 U.S.C § 702.[13]

The Federal Defendants point to this failure, arguing the Complaint does not

"mention the Administrative Procedure Act, let alone state a claim that a *federal*

agency or its employee acted or failed to act in the manner described by the APA's

federal sovereign immunity waiver."  Aplee. Br. (Fed. Defs.) at 28.  Though

---

[13] Plaintiffs' reliance on Z Street is once again long on quotation and short on analysis.  Based on the highlighted text in their quotations, it appears Plaintiffs contend that the district court held that § 702 applies only in suits brought under the APA.  It did not.  And as Plaintiffs acknowledge, Z Street held that the § 702 waiver applies to "suits . . . *that allege wrongful action by an agency or its officers or employees*."  44 F. Supp. 3d at 63 (emphasis added).

Plaintiffs cite § 702 twice in their reply brief, Aplts. Reply at 19, 23, they do not

respond to the Federal Defendants' contention regarding a lack of allegations in the

Complaint to support a waiver of federal sovereign immunity under § 702.

Elsewhere in their reply, Plaintiffs contend that the Complaint includes allegations

that satisfy Ex parte Young as to the Federal Defendants.[14]  But again, Plaintiffs point

only to conclusory allegations regarding conduct by the Federal Defendants.[15]

Plaintiffs therefore fail to show that the district court erred in holding that the

Complaint fails to demonstrate the applicability of the APA's waiver of federal

sovereign immunity.

4.    Wilkins v. United States

In their reply brief, Plaintiffs cite Wilkins v. United States, 598 U.S. 152

(2023), which the Supreme Court decided after Plaintiffs filed their opening brief in

this appeal.  Plaintiffs characterize Wilkins as fundamentally changing the law on

---

[14] Plaintiffs do not explain how Ex parte Young, which is an exception to Eleventh Amendment immunity and tribal sovereign immunity, see Crowe & Dunlevy, 640 F.3d at 1154, has any relevance to the Federal Defendants.

[15] Plaintiffs cite paragraphs of the Complaint describing aspects of federal water law.  See Aplts. Reply Br. at 5–6 (citing Aplts. App., Vol. 1 at 19–24, 27–28, 30–31, 36, 38).  And they cite their conclusory allegations against all defendants. See id. at 6 (citing Aplts. App., Vol. 1 at 32–33).

In any event, even if Plaintiffs had pointed to nonconclusory allegations against the Federal Defendants in their reply brief, we would conclude that their contentions come too late because Plaintiffs' opening brief failed to challenge the district court's holding regarding their conclusory collective allegations against all defendants and cited no nonconclusory allegations against the Federal Defendants that would satisfy the provisions of § 702.  See also n.9, supra.

sovereign immunity in a manner demonstrating that the district court erred in dismissing all claims against all defendants for lack of jurisdiction.

Plaintiffs' argument faces an immediate logical hurdle. We think it very likely that the Supreme Court would have spoken unequivocally if it intended to change sovereign immunity doctrine to the extent Plaintiffs suggest. But it did not. Instead, Wilkins held that the statutory time bar in the federal Quiet Title Act is a non-jurisdictional claims-processing rule. Id. at 165. Plaintiffs do not contend that their case involves the Quiet Title Act, a time bar, or any other procedural requirement that could be classified as a non-jurisdictional claims-processing rule. They instead assert that Wilkins rejected the broad view of sovereign immunity articulated by the dissent in that case, including that (1) the United States is immune from suit unless it consents to be sued, (2) the terms of its consent define a court's jurisdiction, and (3) waivers of sovereign immunity are strictly construed. See Aplts. Reply Br. at 22–23 (relying on Wilkins, 598 U.S. at 166–67 (Thomas, J., dissenting)).[16]

Plaintiffs provide no citation indicating that Wilkins rejected any of these principles. Even the dissent stated that "the majority does not dispute" the "longstanding" principle that the terms of the United States' consent to be sued "define [a] court's jurisdiction to entertain [a] suit" and that "[c]onsequently,

---

[16] Plaintiffs do not explain the asserted relevance of Wilkins to either Eleventh Amendment immunity or tribal sovereign immunity.

sovereign immunity is by nature jurisdictional." Wilkins, 598 U.S. at 167 (Thomas, J., dissenting) (brackets and internal quotation marks omitted). And according to the dissent, the majority opinion also acknowledged that the terms of a waiver of sovereign immunity must be strictly construed. Id. at 168.

Plaintiffs also assert that "Wilkins expressly holds the imposition of sovereign immunity must be based on a clear statement in the statute that Congress intended to deprive the courts of subject matter jurisdiction." Aplts. Reply Br. at 23 (internal quotation marks omitted). Plaintiffs again provide no citation for such a holding. The "clear statement rule" that the Court applied in Wilkins requires that "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." 598 U.S. at 158 (internal quotation marks omitted). As noted, Plaintiffs do not contend that their case involves any procedural requirement that could be classified as a non-jurisdictional claims-processing rule by application of the clear statement rule in Wilkins. They do not demonstrate that any holding in Wilkins alters the result in this appeal.

Plaintiffs fail to show that the district court erred in dismissing their claims against the Federal Defendants for lack of jurisdiction because of federal sovereign immunity. As they also failed to show that the district erred in dismissing their

claims against the Navajo and State Defendants, we AFFIRM the district court's

judgment dismissing Plaintiffs' claims without prejudice for lack of jurisdiction.

Entered for the Court


Joel M. Carson III
Circuit Judge